Larry R. SALADINO, Plaintiff-Appellant,

v.

Robert L. WINKLER,
Defendant-Appellee.

No. 78–1570.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 10, 1979.

Decided Oct. 29, 1979.

Rehearing Denied Jan. 10, 1980.

John B. Kincaid, Wheaton, Ill., for plaintiff-appellant.

Edward T. Butt, Jr., Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendant-appellee.

Before SWYGERT and BAUER, Circuit Judges, and EAST, Senior District Judge.*

BAUER, Circuit Judge.

Plaintiff-appellant Larry R. Saladino instituted this civil rights action under 42 U.S.C. § 1983 against defendant-appellee Sergeant Robert L. Winkler, who was then a deputy with the Office of Sheriff, Du-Page County, Illinois. Saladino sought damages and other relief for injuries he sustained as a result of Winkler's alleged use of excessive force in disarming the plaintiff. Winkler defended on the ground that he was reasonably in fear of imminent, great bodily harm and was therefore entitled to use deadly force in self-defense.

---

* The Honorable William G. East, Senior District Judge of the District of Oregon, is sitting by designation.

From the judgment entered on the jury verdict in favor of the defendant, Saladino appeals. We affirm.

I

On April 10, 1975 Larry Saladino, while driving with Joyce Kubacha, stopped his automobile on Mack Road near Winfield, DuPage County, Illinois. He got out of his car with a shotgun and discharged it at a tree stump, purportedly for target practice. He then returned to the car.

Stephen Black, a teen-age boy who lived nearby, saw the episode and told his mother. Mrs. Black called the DuPage County Sheriff's Office and complained. Defendant Robert L. Winkler, a deputy sheriff, was sent in a marked squad car to investigate. With his car lights and siren on, Winkler drove to the scene, stopping his car within ten feet of Saladino's vehicle located diagonally across the street.

According to plaintiff's evidence, Winkler ordered Saladino and Kubacha to get out of their car. Kubacha obeyed the order and started to approach the squad car. Winkler told her to halt; she did so. Saladino left his car from the driver's side. Winkler asked him if he had a shotgun and Saladino said "yes." He went back into the car to get it out because he presumed from the question that Winkler wanted him to do so. Plaintiff stated that he brought the gun out of the car with the barrel pointed in the air. He admitted that in bringing the shotgun out of the car he pivoted toward defendant and that his left hand was on the barrel and his right hand on the stock. According to the plaintiff's testimony, he was in the act of turning the weapon over to the deputy sheriff when Winkler drew his .357 magnum caliber revolver and shot Saladino through the abdomen. The bullet shattered his spinal cord, resulting in paraplegia.

Winkler's version of the incident is different. Winkler testified that he approached the Saladino car in his marked squad car with all lights flashing. Saladino and Kubacha sat in the car and did not acknowledge his presence. They were doing something which involved the area between them on the front seat of the car. Winkler then said over his loudspeaker: "Do you have a shotgun in the car?" They did not look up; Kubacha then exited. He asked her again if there was a shotgun in the car, and she answered "No."

At that point Saladino opened the driver's side door and started to leave the car; he was partially hidden by the door. Winkler asked him if he had a shotgun in the car, and plaintiff said, "No, we don't have a shotgun." Winkler testified that Saladino then reached back into the car and Winkler said he heard the sound of a shotgun mechanism being activated. Next he heard a hollow plastic sound like that of an empty shotgun shell striking the pavement.

According to Winkler, Saladino then pulled the shotgun out of the car, stepped from behind the open car door, raised the shotgun to the firing position, pointed it directly at defendant's head and said, "Now, you freeze!" It was at this time that Winkler drew his service revolver and fired at Saladino.

After Saladino was shot, Kubacha began going through her purse; Winkler said he feared she too might have a gun. At this time Saladino was again reaching for the shotgun; Winkler ordered him to stop. Again Kubacha began going through her purse; plaintiff yet again tried to reach for the gun. Warning that he would be forced to shoot again, Winkler advised plaintiff to leave the shotgun alone. After handcuffing Kubacha, Winkler called for an ambulance and began administering first aid to Saladino.

Kubacha testified that she did not recall if plaintiff said anything when Winkler asked him if he had a shotgun, and that plaintiff held the gun pointed in the air when he withdrew it from the car.

Stephen Black testified that Saladino, taking the gun from the car, held it for a period of time, and then lowered it toward Winkler.

Plaintiff's complaint alleged that Winkler's use of excessive force in shooting him constituted a deprivation of liberty without

due process of law in violation of 42 U.S.C. § 1983. Winkler defended on the ground that, being reasonably in fear of imminent, great bodily harm, he was justified in using deadly force in self-defense. Trial was had solely on the issue of liability, and the jury returned a unanimous verdict in favor of the defendant. The district court entered judgment on the verdict, and the plaintiff subsequently appealed from that judgment to this Court.

## II

■■ In his first argument on appeal, Saladino contends that he was deprived of a fair trial due to the admission in evidence of irrelevant and prejudicial testimony elicited by defense counsel during cross-examination of plaintiff's witness, Joyce Kubacha. Specifically, Saladino argues that the court improperly allowed defense counsel to inquire into plaintiff's relationship with Ms. Kubacha. We find this contention to be without merit. The partiality of a witness is properly subject to exploration at trial, and is relevant to the credibility of the witness and the weight to be given to the testimony by the jury. *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Since Ms. Kubacha was Saladino's companion at the time of the incident and was a principal witness for the plaintiff at trial, the jury was entitled to assess her credibility as a witness and her bias, if any, in favor of the plaintiff. Moreover, the district court required the defendant to limit the examination of the relationship between the plaintiff and Ms. Kubacha to an inquiry into their friendship. The court refused to allow the defendant to explore the intimacy of the relationship on the ground that the prejudicial effect of such testimony substantially outweighed its probative value. We conclude the court did not err in permitting defense counsel to make such a limited inquiry for the purposes of assessing the credibility and bias of the witness.

■■ Saladino further argues that the district court erred in allowing the defendant to cross-examine Ms. Kubacha regarding two inconsistent statements she had previously given to the police concerning the incident. The record discloses that Ms. Kubacha admitted in open court that she had given prior inconsistent statements to the police, and we therefore regard plaintiff's reliance on Rule 613 of the Federal Rules of Evidence as misplaced. Moreover, we find the challenged testimony to be properly admissible as relevant to the credibility of the witness.

## III

■ Saladino also contends that the district court erred in permitting the defendant to prove that plaintiff was legally intoxicated at the time of the incident. The plaintiff's intoxication was introduced to show that his judgment was impaired when the incident occurred. This evidence was relevant to the issue of the reasonableness of the plaintiff's conduct at that time, and was therefore admissible under Fed.R.Evid. 401. Nor do we regard the probative value of this evidence as substantially outweighed by the danger of unfair prejudice. Fed.R. Evid. 403. This evidence tends to make more probable that the plaintiff acted as the defendant contended he did or that plaintiff otherwise conducted himself in such a manner as to place the defendant reasonably in fear of his life. The record discloses that the district court carefully weighed its decision to permit evidence of plaintiff's intoxication. In that connection, the court indicated it would not give the jury instruction regarding intoxication initially offered by the defendant because of its concern that the jury might consider the evidence of plaintiff's intoxication for purposes foreign to that for which it was admitted. We conclude the district court did not abuse the discretion afforded to it under Fed.R.Evid. 403.

## IV

Plaintiff further asserts as error that the defendant was improperly permitted to inquire of the plaintiff whether he knew at the time of the incident that he was in violation of the law by carrying open liquor

in the automobile, carrying a loaded firearm in the automobile, discharging shotgun shells in the area, and driving on a revoked license. We find this assertion devoid of merit.

■ Only plaintiff's knowledge of the violations and the explanations of them which he offered were elicited by defense counsel. Plaintiff stated he was unaware that it was a violation to carry open liquor and a loaded firearm in an automobile, and further, that he was not aware that it was unlawful to discharge the shotgun in the area. Upon being asked whether he was aware that it was illegal to drive with a revoked driver's license, plaintiff testified that he was not aware that his license was revoked at the time of the incident. However, the plaintiff further stated that his driver's license had been revoked in October 1968, and that it had not been reinstated in Illinois at the time of the occurrence. We regard this testimony as an admission of his license revocation.

■ The trial court weighed carefully its decision to admit plaintiff's testimony to these questions. At the time it was admitted, the court instructed the jury that the evidence would be considered only for the limited purpose of showing the plaintiff's state of mind during the incident. Plaintiff's awareness of whether his conduct was in violation of the law is clearly relevant to his state of mind at the time of the occurrence, and is probative of whether he could reasonably be believed not to have turned a shotgun on the defendant and not to have threatened the defendant's life. We conclude that the district court did not abuse its discretion in admitting plaintiff's testimony as to his awareness of the unlawfulness of his conduct for the purpose of showing plaintiff's state of mind at the time of the incident.

### V

We have examined the plaintiff's other arguments and, in view of the record, find them equally without merit. The judgment appealed from is affirmed, and the Clerk of this Court is directed to enter judgment accordingly.

AFFIRMED.

SWYGERT, Circuit Judge, dissenting.

It is my belief that certain events which took place during the trial were so egregious and so prejudicial to plaintiff as to deny him a fair trial:

(1) On cross-examination defendant's counsel asked Saladino if he was aware that it was illegal to drive with a license that had been revoked. Objection was registered on the ground of relevancy. Defense counsel argued that under the circumstances a person being apprehended by an officer and knowing of such a violation might act in an irrational manner. The following colloquy then occurred:

THE COURT: Would this be the extent of your bringing in matters which skirt on relevancy? Is there anything more?

[Defense counsel]: I propose to show that he did not have a driver's license because I have to tie it up that he did not have it. I won't even do that if there is objection, but I have to show and can show that he did know that his license was revoked, and I propose to show that his blood sugar was .126.

THE COURT: You are going to have to show it, or this case is going to be a mistrial.

[Defense counsel]: I will show both of those.

The objection was overruled, and the witness answered: "I wasn't even aware that my license was revoked at the time." The transcript then reflects the following:

[Defense counsel]: Had it been?

A. The last revocation I had was in October of 1968, ten years prior, or eight years prior to that time. There was no revocation at that time.

Q. Did you have a license at that time?

A. I had moved to Miami. My license had been revoked at that time, and I had gotten a Miami license. I had been driv-

ing on that up until that time. And I moved to New York, and then I came here, and I was going to transfer that over, and I was not aware that there was any revocation.

[Plaintiff counsel]: Object to the entire line of questioning, your Honor, and move to strike it, and move for a mistrial.

THE COURT: The objection is overruled. Motion denied.

Thereafter, despite his representation, defense counsel never attempted to prove that the plaintiff was driving an automobile without a driver's license.* At the close of all the evidence, plaintiff asked that certain evidence, including that relating to his driver's license revocation, be struck and for a mistrial. Defense counsel responded:

Your Honor, the plaintiff admitted that his license was revoked, so that has been established.

In view of the Court's feelings about this matter that it should not become prejudicial, I did not go into the matters exhaustively or elaborate upon them. It has been established by competent evidence that there was opened liquor in the car, and of course, the Court will take judicial notice of the violation.

It has been established that he was driving without a license, and that the plaintiff has admitted it. I didn't go back on it and highlight it because the Court didn't feel we should do these things. It was admitted for that sole purpose, for a limited purpose.

The defense counsel misstated the record when he told the judge that it had been "established that the plaintiff was driving without a license." Plaintiff stated that his Illinois license had been revoked more than six years earlier, and that he subsequently moved to Miami and obtained a Florida driver's license which he was driving with at the time. Plaintiff testified that he did not believe he was driving on a revoked license.

There are two other aspects of this situation just detailed which bear discussion. First, despite the defendant's argument that a revocation would be relevant, it is absurd to infer that Saladino was aiming his shotgun at defendant because he feared being arrested for driving without a license. Moreover, a revocation of plaintiff's driver's license in 1968—more than six years before the shooting incident—was so remote in time that its irrelevance is obvious. The objection to the initial question should have been sustained.

Second, it is reversible error for an attorney, after laying a foundation for an impeaching answer to a question and after promising the court that he will produce the impeaching evidence, to fail to make good on his promise. *United States v. Bohle*, 445 F.2d 54 (7th Cir. 1971).

(2) The record must be quoted at some length in order to place in context another prejudicial error requiring reversal. On cross-examination of Kubacha the following occurred:

THE WITNESS: I have come to know him well, yes.

[Defense counsel]: Did you at that time?

A. No, not really.

Q. Didn't you spend as much as maybe 20 hours a week with him?

A. In the week that the shooting happened, yes. In the weeks before that, no, I'd see him occasionally.

Q. Where would you spend this time?

[Plaintiff counsel]: Objection. Move to strike.

THE COURT: Sustained.

[Defense counsel]: After this occurrence, did the police officers interrogate you?

A. Yes, they did.

Q. They asked questions about what you saw and what happened?

A. Yes, they did.

Q. You gave them a statement?

---

* At oral argument and in his brief, defense counsel admitted that he was in possession of plaintiff's driving record.

A. I was talking, I didn't know—I couldn't even recall the road it happened on. It was right after that they took me to the police station. I was brought into a room, and there was a bunch of people there, and I just answered questions. I don't know it was a statement. I didn't know it was anything, that it was any kind of a, you know, that it would be recorded or anything. I just told them to the best of my knowledge what happened, but I was trying to protect some people, and they just wrote down whatever I said. I don't even recall what I said.

Q. And then you went back several days later?

A. Yes, I did.

Q. And then you gave them a different statement?

[Plaintiff counsel]: Objection and move to strike it for the reasons stated in my motions in chambers.

[Defense counsel]: This goes to credibility, your Honor.

THE COURT: Overruled. She may answer.

[Defense counsel]: Did you not?

* * * * * *

THE WITNESS: Okay, yes; well, it wasn't a different statement. It was just that there were a few discrepancies about where I was the day that it happened during the day, and I just told them that I was at Kevin's, and Debbie was there, and that's about it.

And then I knew what road it happened on because when it happened, I wasn't even sure what road it was. I told them Schaftner, or something, which is the other side of Mack Road.

It is apparent from the foregoing that when she was first questioned by the police officer, Kubacha attempted to hide her relationship with plaintiff prior to the shooting. Defendant argues that he did not seek to show by extrinsic evidence an inconsistent statement, but that the discrepancies even if not introduced to show whether defendant acted reasonably on the day in question, are relevant to her credibility. It is obvious that the inconsistencies did not relate to any material point in issue. They dealt with an entirely collateral matter. Under such circumstances, impeachment is not permitted. *United States v. Battaglia,* 394 F.2d 304, 315 (7th Cir. 1968); *Head v. Halliburton Oilwell Cementing Co.,* 370 F.2d 545, 546 (5th Cir. 1966); *contra United States v. Barash,* 365 F.2d 395, 401 (2d Cir. 1966). Credibility per se is one thing; improper impeachment to affect credibility is quite another.

To the prejudice caused by the foregoing reversible errors was added the undue prejudice suffered by plaintiff because of the improper conduct of defense counsel.

(1) In his opening statement counsel was permitted over objection to tell the jury that plaintiff was married and had a child and that during the day of the occurrence he was with Joyce Kubacha; counsel stated that when plaintiff went to a friend's home, "there were two girls there; Mr. Kennedy's girl and another, Joyce Kubacha. They stayed there, they had lunch, they drank beer, and they left about 6:00 or 6:30 P.M., he and Joyce Kubacha."

(2) During the cross-examination of Mrs. Beverly Black, defense counsel asked whether she feared retaliation for testifying. The record shows the following:

Q. This other conversation that Mr. Kincaid was referring to was sometime after when Deputy Israel called you back?

A. That's right.

Q. You were a little afraid, frankly, at that time when Israel called back about testifying for fear of retaliation by the kids, weren't you?

A. I was concerned about testifying, yes.

Q. And it was retaliation from others?

[Plaintiff counsel]: Objection, your Honor. I move that be stricken.

THE COURT: Yes, sustained.

[Plaintiff counsel]: I move for a mistrial.

THE COURT: And the jury is instructed to disregard it.

**1218**

The question to which an objection was sustained could only have been asked in order to prejudice the jury.

(3) The record shows the following occurrence during the closing argument of defense counsel:

Now, I don't think Larry Saladino set out to do this intentionally. I think it was a combination of all of these things, knowing all of these things, not wanting these things to come to light, plus, unfortunately at the time, a little too much beer. That changed his personality.

If I were to make a confession, I would tell you now, and openly, and candidly, that if I have too much to drink, it changes my personality.

[Plaintiff counsel]: I object to what happens to counsel, your Honor.

[Defense counsel]: Well, your Honor, I would like to strike it myself. I join in the motion.

THE COURT: Yes, the objection is sustained, and the jury is instructed to disregard that remark.

[Defense counsel]: If anyone does, if a reasonable person does, this occurs.

It is axiomatic that it is improper for counsel to talk about personal experiences in summation. He is not a witness and cannot assume that role. The fact that the statement was struck even at the instance of the offending counsel is of little or no consequence.

The foregoing prejudicial events which occurred during the trial together with the improper conduct of counsel, deprived plaintiff of the fair trial to which he was entitled. I would reverse and remand.