**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Richard D. ROBINSON, Defendant–
Appellant.**

No. 97–4105.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 18, 1998.

Decided Nov. 18, 1998.

Rehearing Denied Dec. 16, 1998.

Sharon Jackson (argued), Judith A. Stewart, Office of United States Attorney, Indianapolis, IN, for Plaintiff–Appellee.

Evelyn L. Keaton (argued), Indianapolis, IN, for Defendant–Appellant.

Before POSNER, Chief Judge, and FLAUM and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Richard Robinson was convicted of armed bank robbery and of use of a firearm in relation to the commission of the armed bank robbery. The District Court sentenced Robinson to 35 years in prison and ordered him to pay $5,134 in restitution. On appeal, Robinson raises two issues: (1) whether the trial court erred in admitting evidence pertaining to another later bank robbery to which Robinson pleaded guilty and (2) whether the evidence was insufficient to convict him of the charges alleged in the indictment. We reject the arguments presented by Robinson and affirm his conviction.

## I. History

A federal grand jury returned a four-count indictment against Richard Robinson on charges stemming from two armed bank robberies. Counts one and two of the indictment alleged that on April 8, 1997, Robinson robbed the Americana Bank in Anderson, Indiana, and that he used a firearm during the commission of this offense. Counts three and four of this same indictment alleged that ten days later, on April 18, 1997, Robinson committed another armed robbery with a firearm, this time robbing Harrington Bank in Fishers, Indiana. The cities of Anderson and Fishers are separated by approximately twenty-five miles. Robinson pleaded guilty to the later armed robbery of Harrington Bank and went to trial on the charges stemming from the earlier Americana Bank robbery. Because the government offered evidence of the April 18 Fishers robbery at Robinson's trial, it is necessary to review the facts of both robberies when considering the issues before us.

On the afternoon of Tuesday, April 8, 1997, Robinson set out from his home in his wife's blue Chevrolet Cavalier to commit the first of the two bank robberies. Upon arriving at Americana Bank in Anderson at approximately 3:40 p.m., he donned an orange ski mask with a single oval opening and proceeded into the bank brandishing his mother's handgun in one hand and carrying a large and distinctive "Louis Vuitton"-brand duffle bag in the other. In addition to the orange ski mask, Robinson wore a pair of brown work coveralls. Once inside the bank, Robinson sprinted to the teller counter and vaulted over the counter as he demanded money. He personally gathered money from the two teller stations after placing the handgun on an adding machine, vaulted back over the counter, and exited the bank. Robinson then made his getaway in the Cavalier while being observed by an off-duty police officer.

Robinson robbed Harrington Bank in Fishers ten days later, on April 18, at approximately 12:00 p.m., in a manner mirroring the heist that occurred in Anderson. Robinson drove to the bank in his wife's Cavalier and pulled on the orange ski mask prior to entering the bank. After leaping over the teller counter, he placed his handgun down and personally removed money from the teller drawers. Robinson once again departed in the Cavalier.

While Robinson's technique remained the same, the results did not, and his career as a bank robber was brought to a hasty conclusion. Harrington Bank's Trust Officer observed Robinson fleeing the bank, and she telephoned the license plate number and a description of the Cavalier to the police. Officers Tony Craig and Danny Cook of the Noblesville Police Department observed a vehicle fitting the description of Robinson's Cavalier in the Noblesville area, a short distance away from where the robbery had just occurred. The officers pulled behind the vehicle and confirmed the Cavalier's license plate matched the license plate of the vehicle observed driving away from Harrington Bank. After Robinson drove into a parking lot and opened the door of the Cavalier, Craig and Cook got out of their vehicle and ordered Robinson to place his hands in the air. At this time, the officers observed Robinson reaching for his handgun and ordered Robinson to drop his weapon. Instead of heeding the officers' command, Robinson closed the door of the Cavalier and sped away.

A high speed pursuit of Robinson ensued, at times exceeding speeds of 100 miles per hour. According to the testimony of one of the officers pursuing Robinson, he disregarded traffic signals, operated his vehicle on the wrong side of the road, nearly caused numerous traffic accidents, and evaded a road block that had been set up by police before the Cavalier was eventually disabled.

With Robinson's vehicle finally stopped, Craig and Cook positioned their car alongside the Cavalier. As Robinson attempted to exit the car, the officers observed him pick up the handgun from the passenger seat. At that moment, Sheriff Joe Cook of the Hamilton County Sheriff's Department ran his vehicle into the Cavalier causing Robinson to fall back into the car and drop the handgun. Robinson again exited the car and attacked Captain Mike Brooks of the Noblesville Police Department who had just arrived upon the scene. A prolonged struggle between

Robinson and several officers followed. Robinson managed to get into the driver's side front seat of Brooks's vehicle, and, while reaching with his left hand for Brooks's weapon, he used his right hand to put the vehicle in gear. The vehicle lunged forward and pinned Craig between the doorjamb and Brooks's vehicle. Although Craig managed to free himself from this position, he was hit again by the vehicle and thrown to the ground. During this time, Brooks continued to struggle with Robinson for control over Brooks's weapon and in the process was dragged by the vehicle on the ground outside the driver's side door.

Despite Robinson's efforts, Brooks was eventually able to reach the gear shift and place the car in park. He then removed the keys from the ignition and continued to struggle with Robinson for possession of his handgun. With the assistance of other officers, including Craig, Brooks secured the handgun and subdued Robinson, placing him under arrest. Upon inspection of Robinson's vehicle, the officers recovered the orange ski mask, the "Louis Vuitton"-brand duffle bag containing money from the most recent robbery, including several "bait bills" taken from the three teller stations at Harrington Bank, and a .38 caliber handgun loaded with four live rounds.

Robinson was tried and convicted by a jury on the charges stemming from the April 8 armed robbery of Americana Bank in Anderson. The District Court imposed a sentence of 420 months and ordered Robinson to pay restitution in the amount of $5,134. Robinson now appeals.

## II. Analysis

### A. Admission of Evidence of the Harrington Bank Robbery and the Subsequent Chase

■ Robinson contends that the District Court abused its discretion by allowing the government to admit evidence of his plea of guilty to the charges stemming from the April 18 armed bank robbery at his trial for the April 8 armed bank robbery. The evidence of the April 18 armed bank robbery included evidence tending to demonstrate the similarities between the two robberies, evidence of the high speed chase and Robinson's struggle with police subsequent to the chase, and the materials recovered from Robinson's vehicle following his apprehension, including the orange ski mask, the distinctive duffle bag containing money from the April 18 armed bank robbery, and the handgun used in both robberies. Prior to trial, the District Court conducted an evidentiary hearing on the admissibility of this evidence and, over Robinson's objections, ruled that the admission of this evidence was not prohibited by Rule 404(b) of the Federal Rules of Evidence. The admission of evidence under Rule 404(b) by a district court is reviewed only for an abuse of discretion. *United States v. Moore*, 115 F.3d 1348, 1354 (7th Cir.1997); *United States v. Zapata*, 871 F.2d 616, 621 (7th Cir.1989).

Rule 404(b) specifically prohibits the introduction of evidence of other crimes, wrongs, or acts when such evidence is offered to prove the character of a person in order to show conduct in conformity therewith on a particular occasion. As we have explained, "[a]lthough a defendant's past criminality may well have some probative worth concerning whether the defendant acted criminally at a later date, the probative value of this evidence will be relatively small and the risk of its misuse by the factfinder will be great." *United States v. Smith*, 103 F.3d 600, 602 (7th Cir.1996). However, Rule 404(b) expressly permits evidence of other crimes, wrongs, or acts to be introduced for purposes other than to establish a defendant's criminal propensity, including proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." At the evidentiary hearing conducted by the District Court, the government submitted that the evidence at issue would be offered primarily to establish identity and consciousness of guilt with respect to the April 8 bank robbery.

■ The categories that appear in the text of Rule 404(b) are not exclusive. Indeed, Rule 404(b) does not require the party offering the evidence to force the evidence into a particular listed category, but simply to show *any* relevant purpose other than

proving conduct by means of a general propensity inference. We have held that evidence may be admissible under Rule 404(b) to demonstrate *modus operandi*. *Smith*, 103 F.3d at 603. Evidence of *modus operandi* is evidence that shows a defendant's distinctive method of operation. *Id.* Such evidence may be properly admitted pursuant to Rule 404(b) to prove identity. *Id.* In addition, some courts have interpreted the admission of evidence establishing consciousness of guilt as coming within the identity exception to Rule 404(b). *See, e.g., United States v. Sims*, 617 F.2d 1371, 1378 (9th Cir.1980) ("Flight immediately after the commission of a crime, especially where the person learns that he may be a suspect ... supports an inference of guilt.... It was therefore relevant under the identity exception to Rule 404(b)."). Irrespective of whether such evidence may be admitted specifically to show identity, we have held that evidence demonstrating consciousness of guilt may be properly admitted under Rule 404(b). *See United States v. Acevedo*, 28 F.3d 686, 688 (7th Cir.1994); *see also United States v. Bartelho*, 129 F.3d 663, 677 (1st Cir.1997) (noting that evidence demonstrating consciousness of guilt may be admitted under Rule 404(b)) (citing *United States v. Zabic*, 745 F.2d 464, 471 (7th Cir. 1984)), *cert. denied*, —— U.S. ——, 119 S.Ct. 241, 142 L.Ed.2d 198 (1998).

■ We have fashioned a four-prong test to determine the appropriateness of admitting evidence of other crimes, wrongs, or acts. Under this test, the admissibility of the evidence is dependant upon whether: (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the evidence has probative value that is not substantially outweighed by the danger of unfair prejudice. *Moore*, 115 F.3d at 1354; *Smith*, 103 F.3d at 603; *United States v. Mounts*, 35 F.3d 1208, 1214 (7th Cir.1994); *Zapata*, 871 F.2d at 620. The fourth prong of this test incorporates Rule 403, which provides for the exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time. Though not specifically stated as such, the primary thrust of Robinson's argument, both before the District Court during the evidentiary hearing and before this Court on appeal, is that the second and fourth prongs of this test were not met with respect to the District Court's admission of evidence relating to the April 18 armed bank robbery.

■ We are able to dispense quickly with consideration of the first and third prongs. With respect to the first prong, the government offered evidence demonstrating the similarities between the two robberies and the evidence of flight and Robinson's struggle with police after the April 18 robbery to show identity and consciousness of guilt with respect to the April 8 robbery. Evidence demonstrating the similarities between the manner in which the two armed bank robberies were carried out goes toward proving identity by establishing the perpetrator's *modus operandi*. Evidence of flight is admissible under Rule 404(b) to show consciousness of guilt, as well as guilt itself. *See United States v. Hunter*, 145 F.3d 946, 951 (7th Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 266, —— L.Ed.2d —— (1998); *United States v. Kord*, 836 F.2d 368, 372 (7th Cir.1988); *see also United States v. Jackson*, 886 F.2d 838, 845–46 (7th Cir.1989) (concluding that evidence of a defendant's refusal to furnish a writing exemplar, like flight, demonstrated consciousness of guilt and was, therefore, admissible under Rule 404(b)). By offering this evidence to establish identity and consciousness of guilt rather than to show a general bad character or a propensity to commit criminal acts, it is clear that the government met the requirements contemplated by the first prong. The third prong also need not detain us long, as Robinson's plea of guilty to the April 18 robbery satisfies its requirements.

When considering the second and fourth prongs—whether the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue and whether the evidence has a probative value that is not substantially out-

weighed by the danger of unfair prejudice—it is helpful to consider the evidence of the similarities between the two armed bank robberies first and then to turn our attention to the evidence of flight and Robinson's struggle with the police.

■ As stated, the evidence demonstrating the similarities between the two crimes amounts, in essence, to evidence demonstrating *modus operandi.* We have cautioned that "[i]f defined broadly enough, *modus operandi* evidence can easily become nothing more than the character evidence that Rule 404(b) prohibits." *Smith,* 103 F.3d at 603. To ensure that the evidence at issue is not merely offered to establish the defendant's propensity to commit certain conduct, we require that *modus operandi* evidence bear "a singular strong resemblance to the pattern of the offense charged," *United States v. Shackleford,* 738 F.2d 776, 783 (7th Cir.1984) (quoting *United States v. Jones,* 438 F.2d 461, 466 (7th Cir.1971)), and that the similarities between the crimes be "sufficiently idiosyncratic to permit an inference of pattern for purposes of truth." *United States v. Hudson,* 884 F.2d 1016, 1021 (7th Cir.1989) (quoting *Shackleford,* 738 F.2d at 783 (citations omitted)). "Thus, we must first determine whether there are sufficient similarities between the other crime evidence and the charged crime that clearly distinguish the defendant from other criminals committing bank robberies." *Moore,* 115 F.3d at 1355.

There are numerous similarities between the armed bank robberies of April 8 and April 18 that make them "clearly distinctive from the thousands of other bank robberies committed each year." *Moore,* 115 F.3d at 1355 (quoting *Smith,* 103 F.3d at 603). In both cases, the robber donned an orange ski mask prior to entering the bank, and he entered the bank carrying a distinctive duffle bag in one hand and brandishing a handgun in the other. Once inside the banks, the robber vaulted over the teller counter and demanded money. The robber emptied the teller drawers at each bank by himself, but only after placing the handgun down. The getaway vehicle in both cases was identified as a blue Chevrolet Cavalier. Furthermore, the robberies occurred within ten days and twenty-five miles of each other. This proximity in both time and location has significant bearing on the determination of whether the robberies are sufficiently idiosyncratic so as to permit an inference of pattern when considered in conjunction with the distinctive characteristics of each robbery. *See Smith,* 103 F.3d at 603 (noting the one month interval and 40 mile distance between two bank robberies when viewed in light of the rural locations of the banks in Wisconsin was relevant to demonstrating *modus operandi*). It is clear that sufficient similarities exist with respect to the April 8 and the April 18 robberies to identify Robinson as the individual responsible for committing these robberies.

Given the similarities between the two robberies, it cannot be said that the probative value of evidence demonstrating these similarities is substantially outweighed by the danger of unfair prejudice. Moreover, any risk of unfair prejudice was lessened by the jury instruction given by the District Court that the evidence offered by the government relating to the April 18 bank robbery was relevant only to the purposes contemplated by Rule 404(b). *See Smith,* 103 F.3d at 604; *United States v. Curry,* 79 F.3d 1489, 1497 (7th Cir.1996).

The government's theory for the admission of evidence of the chase and Robinson's struggle with the police following the April 18 armed bank robbery, however, is somewhat more troublesome. During the evidentiary hearing before the District Court, the government argued that the evidence of the chase and subsequent struggle demonstrated Robinson's consciousness of guilt with respect to the April 8 armed bank robbery. The government explained that the motivation prompting flight and struggle on April 18 was twofold—Robinson was fleeing from the most recent armed bank robbery and he also knew that he possessed evidence connecting him to the April 8 armed bank robbery. Thus, he had a dual purpose in fleeing from law enforcement after the April 18 armed bank robbery. The government argued that the fervor with which he attempted to escape from the police was proportional to Robinson's consciousness of guilt, and, therefore, the magnitude of Robinson's resistance

was directly related to Robinson's consciousness that he possessed evidence connecting him with not one, but two armed bank robberies. In short, the government asserted that Robinson was fleeing, in effect, from both armed bank robberies.

■ We have long adhered to the Supreme Court's cautionary language urging courts to be wary of the probative value of flight evidence. *See Wong Sun v. United States*, 371 U.S. 471, 483 n. 10, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) ("[W]e have consistently doubted the probative value in criminal trials of evidence that the accused fled the scene of an actual or supposed crime."). While we allow evidence of flight to be presented, courts must engage in careful deliberation when considering its admission. Determination of the probative value of flight as evidence of a defendant's guilt depends on the degree of confidence with which four inferences can be drawn: (1) from behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged. *See United States v. Levine*, 5 F.3d 1100, 1107 (7th Cir.1993); *see also United States v. Jackson*, 572 F.2d 636, 639 (7th Cir.1978) (adopting this analysis as set forth in *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir.1977)).

In the instant case, Robinson's conduct in attempting to elude police after the April 18 armed bank robbery certainly constituted flight. It cannot be seriously disputed that this flight was the result of consciousness of guilt. The degree of confidence with which the jury could reasonably draw inferences from Robinson's flight to an ultimate finding of his guilt with respect to the April 8 armed bank robbery is also substantial. The relative proximity in time between the crime charged and Robinson's flight and the fact that at the time he fled from police he possessed considerable evidence linking him to the April 8 armed bank robbery are sufficient to establish a reasonable inference that he fled because of consciousness of guilt stemming from both the April 8 and the April 18 armed bank robberies.

Despite Robinson's arguments to the contrary, evidence of flight from the April 18 bank robbery is not merely generalized evidence offered to establish Robinson's character or his propensity to commit criminal acts. By establishing that Robinson fled from the April 18 armed bank robbery and struggled with police while in possession of evidence linking him to both that robbery and an armed bank robbery occurring a mere ten days before that date, the government was able to offer proof that Robinson possessed a culpable state of mind. As we have explained, "[t]his is a legitimate use of such evidence, whether one conceives of it as outside the scope of Rule 404(b) because of the evidence's 'intrinsic' value deriving from its specific relationship to the facts of the offense or as countenanced by Rule 404(b) because of its relevance in proving a non-character-related consequential fact—consciousness of guilt." *Acevedo*, 28 F.3d at 688. Under either theory, the evidence is probative of Robinson's state of mind in a manner entirely separate from how it reflects upon his character.

While it may be tempting to conclude Robinson's flight from the April 18 armed bank robbery has no bearing on his consciousness of guilt with respect to the April 8 armed bank robbery, and, indeed, Robinson argues as much, this position can be dispensed with if one considers two scenarios not far removed from the instant case. Under Rule 404(b), evidence of flight certainly would be admissible to show consciousness of guilt of a defendant who knew he was in possession of evidence demonstrating his involvement in an armed bank robbery if that defendant fled from or struggled with police even if the police were attempting to stop him for a mere routine traffic violation, such as a broken taillight, shortly after the commission of the bank robbery. *Cf. United States v. Dierling*, 131 F.3d 722, 731 (8th Cir.1997) (concluding that evidence of a defendant's flight and struggle with a police officer attempting to arrest the defendant for violation of a domestic protection order was admissible as evidence of consciousness of guilt with respect to a conviction for conspiracy to distribute narcotics and stating that "[t]he intended

purpose of the attempted stop need not be related to the conspiracy.... The real question is what is in the mind of the person who flees and whether there is sufficient evidence to allow the inference that the flight was prompted by consciousness of guilt."), *cert. denied,* —— U.S. ——, 118 S.Ct. 1379, 140 L.Ed.2d 525 (1998). Similarly, if a defendant committed a string of five armed bank robberies and was pursued by police after robbing a sixth, it can hardly be said that evidence of flight could not be admitted to show consciousness of guilt with respect to the other five robberies based on the contention that he was merely fleeing from his latest endeavor to plunder a bank. *Cf. United States v. Clark,* 45 F.3d 1247, 1251 (8th Cir. 1995) ("The existence of other possible reasons for flight does not render the inference [of guilt] impermissible or irrational."). And so it is with this case. Robinson had knowledge that he committed acts proscribed by law on both April 8 and April 18. This knowledge was manifested in his efforts to evade police after the robbery on April 18. In such a case, it is not the role of the District Court to parse the mind of a defendant to determine which act may have created a higher consciousness of guilt on a given occasion when the defendant is in possession of evidence linking him to both robberies and when the underlying crimes are virtually identical and separated by a mere ten days.

To the extent that the evidence at issue falls outside the scope of Rule 404(b), we will not deprive a party from presenting evidence when its exclusion leaves a conceptual or chronological void. *See United States v. Lahey,* 55 F.3d 1289, 1295–96 (7th Cir.1995); *see also United States v. King,* 126 F.3d 987, 995 (7th Cir.1997) ("[A] court may admit evidence of other criminal conduct that is inextricably intertwined with a charged offense or that completes the story of the charged offense."). The government needed the evidence of the chase and Robinson's struggle to present a complete picture of the events transpiring between the short time separating the April 8 armed bank robbery and Robinson's capture on April 18. Beyond merely establishing consciousness of guilt, this evidence explains the circumstances surrounding Robinson's arrest and how the government came into possession of the orange ski mask, the distinctive duffle bag, and the handgun—three pieces of evidence of paramount importance to the government's case. "While prosecutorial need alone does not mean probative value outweighs prejudice, the more essential the evidence, the greater its probative value, and the less likely that a trial court should order the evidence excluded." *Jackson,* 886 F.2d at 847.

Robinson contends that the District Court failed to balance the probative value of the evidence against its potential for undue prejudice as dictated by Rule 403. This contention is simply belied by the record in this case. After identifying the probative worth of the evidence of the similarities between the two armed bank robberies and of the evidence of flight, the District Court expressly concluded that this worth was not substantially outweighed by the danger of undue prejudice. Although the danger of unfair prejudice to Robinson existed with respect to the evidence of the chase and struggle, the District Court took careful steps to insure that the jury viewed this evidence in the proper light by specifically instructing the jury as to the limited use to which it could be put, and we presume the jury obeyed the court's instruction. *See United States v. Evans,* 27 F.3d 1219, 1232–33 (7th Cir.1994). The potential for prejudice was further reduced by the fact that the government called only one witness, Officer Craig, to testify regarding the chase and Robinson's struggle with police. Accordingly, we conclude that the District Court properly employed a careful and well-reasoned analysis before determining that the probative worth of the evidence at issue was not substantially outweighed by the risk of undue prejudice and did not abuse its discretion by admitting this evidence.

**B. Sufficiency of the Evidence**

■ Robinson also claims that the government failed to present sufficient evidence from which a rational jury could determine that he committed the charged crimes. A defendant advancing such an argument faces a "nearly insurmountable hurdle." *United States v. Hickok,* 77 F.3d 992, 1002 (7th

Cir.1996) (quoting *United States v. Teague*, 956 F.2d 1427, 1433 (7th Cir.1992)). We review the evidence in the light most favorable to the government to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also United States v. Woods*, 148 F.3d 843, 846 (7th Cir.1998); *Moore*, 115 F.3d at 1363. We will overturn the verdict "only if the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Granados*, 142 F.3d 1016, 1019 (7th Cir.1998); *see also United States v. Agostino*, 132 F.3d 1183, 1192 (7th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1526, 140 L.Ed.2d 677 (1998); *United States v. Moralez*, 964 F.2d 677, 679 (7th Cir.1992).

▬▬▬ Robinson cannot meet this onerous burden. The jury found Robinson guilty of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d) and use of a firearm during the commission of this offense in violation of 18 U.S.C. § 924(c). To prove that a defendant committed armed bank robbery, the government must show that the defendant forcibly robbed a bank and that by use of a dangerous weapon or device, he assaulted someone or put lives in danger. 18 U.S.C. § 2113(a), (d); *see also Woods*, 148 F.3d at 846. A conviction under section 924(c) for use of a firearm during a crime of violence requires proof of two elements: (1) the defendant used or carried a firearm and (2) the use or carrying was during and in relation to a crime of violence. *Smith v. United States*, 508 U.S. 223, 227–28, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993); *see also United States v. Windom*, 19 F.3d 1190, 1199 (7th Cir.1994). Robinson maintains that the government failed to prove beyond a reasonable doubt that he was the individual who committed the April 8 armed bank robbery and that the jury's verdict was based solely on circumstantial evidence and piling inference upon inference.

The record is replete with evidence that would permit a reasonable juror to find Robinson committed the charged crimes. The testimony of employees from both Americana Bank and Harrington Bank demonstrated the numerous similarities between the two armed bank robberies. These similarities included: the use of an orange ski mask with the single oval opening, a distinctive duffle bag, a handgun, and a blue Chevrolet Cavalier; the identification of the perpetrator of the armed bank robberies as a black male; and the perpetrator's verbal commands and actions during the commission of both robberies that included the brandishing of a handgun, vaulting over the teller's counter, and removing the money from the teller drawers himself. Officers responding to the April 18 armed bank robbery testified regarding the recovery of an orange ski mask, a distinctive duffle bag, and a handgun from the Cavalier Robinson used in attempting to evade police. Robinson's supervisor testified that Robinson was absent from work on both April 8 and April 18. A former coworker testified that he was missing a pair of brown work coveralls that Robinson frequently borrowed—the same type of coveralls worn by the perpetrator during the commission of the April 8 armed bank robbery.

Robinson makes much of the fact that the government resorted to circumstantial evidence to establish that he was the individual who committed the April 8 armed bank robbery. However, this fact is of little help to Robinson. As we have explained:

> "[C]rimes may be proved entirely by circumstantial evidence...." *United States v. Townsend*, 924 F.2d 1385, 1390 (7th Cir.1991). Circumstantial evidence is not less probative than direct evidence, and, in some cases is even more reliable. *United States v. Grier*, 866 F.2d 908, 923 (7th Cir.1989). "If the government proves its case by circumstantial evidence, it need not exclude every reasonable hypothesis of innocence so long as the total evidence permits a conclusion of guilt beyond a reasonable doubt.... The trier of fact is free to choose among various reasonable constructions of the evidence. *United States v. Radtke*, 799 F.2d 298, 302 (7th Cir.1986)."

*United States v. Rose*, 12 F.3d 1414, 1420 (7th Cir.1994) (quoting *United States v.*

*Moore,* 936 F.2d 1508, 1524 (7th Cir.1991) (internal quotation marks omitted)).

> And while [w]e recognize that in reviewing a guilty verdict based on circumstantial evidence, we must insure that the verdict does not rest solely on the piling of inference upon inference ... neither should we view every bit of evidence in isolation. Only when the record contains no evidence, regardless of how it is weighted, from which the [trier of fact] could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict.

*Moore,* 115 F.3d at 1364 (quoting *Rose,* 12 F.3d at 1420 (quotation marks and citations omitted)).

In the instant case, the record clearly shows that a reasonable juror could have found that the government proved identity beyond a reasonable doubt. The evidence demonstrating the similarities between the two armed bank robberies establishes that Robinson used the same *modus operandi* in the April 8 armed bank robbery to commit the April 18 armed bank robbery. *Id.* When this circumstantial evidence is considered in conjunction with the direct evidence offered by the government at trial, a sufficient basis existed for a reasonable juror to conclude that Robinson committed the April 8 armed bank robbery and that he used a firearm during the commission of this offense. Furthermore, although Robinson did present evidence of an alibi, "[t]he sorting out of uncertain or conflicting testimony is clearly within the domain of the jury." *United States v. Brooks,* 125 F.3d 484, 494 (7th Cir.1997). Viewed in the light most favorable to the government, there clearly was sufficient evidence such that a rational jury could have convicted Robinson on the counts alleged in the indictment. Accordingly, Robinson's claim that his conviction was not supported by sufficient evidence is without merit.

### III. CONCLUSION

For the foregoing reasons, we reject Robinson's appeal and his conviction is AFFIRMED.