In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1283

NAOMI TREECE,

Plaintiff-Appellant,

v.

STEVEN HOCHSTETLER and CITY OF NAPERVILLE,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 94 C 5548--Rebecca R. Pallmeyer, Judge.

Argued February 17, 2000--Decided May 17, 2000

Before Harlington Wood, Jr., Coffey and Ripple, Circuit
Judges.

COFFEY, Circuit Judge. Plaintiff Naomi Treece
("Treece") filed a section 1983 federal civil
rights suit against officer Steven Hochstetler
("Hochstetler") of the City of Naperville police
department and the City of Naperville ("City"),
alleging that they maliciously prosecuted her./1
After the City "agree[d] to entry of judgment
against [itself]" should "the jury enter[ ] a
finding of liability against Defendant
Hochstetler," the judge bifurcated the trial,
removing the City from the trial, and ordered
Treece's section 1983 action against Hochstetler
to proceed. The jury returned a verdict in favor
of Hochstetler and the judge accordingly entered
a judgment on the verdict in favor of Hochstetler
and entered a summary judgment in favor of the
City./2 The plaintiff moved for a new trial and
the court denied the request. Treece appeals,
arguing that the court abused its discretion when
it bifurcated the trial and in excluding evidence
of Hochstetler's prior "bad acts." Treece also
appeals the judge's entry of summary judgment in
favor of the City. AFFIRM.

I.  BACKGROUND

On September 21, 1991, Naperville police officer
Hochstetler received an anonymous tip describing
an unusually large amount of scrap wire in the

open bed of a pick-up truck parked in the driveway of Treece and her husband, Otis Treece ("Otis"). Pursuant to the police department supervisor's instructions, Hochstetler went to the Treece residence to verify the information and discovered what he described as a large amount of scrap wire in Otis' pickup truck./3 Also found was a box, containing some of the same scrap wire, addressed to the Naperville Electric Department. The scrap wire and box were seized and retained as evidence, and shortly thereafter, Otis was suspended from his job./4

A few days later, Larry Dickson, a fellow Naperville police officer, informed Hochstetler that Treece had attempted to contact him. That evening, Hochstetler telephoned Treece and he arranged to meet with her at the Naperville train station the next day. He stated that they conversed for about fifteen minutes, but Hochstetler's and Treece's accounts of what transpired are vastly different. Treece alleges that Hochstetler demanded a $100,000 bribe to drop the charges against her husband. Hochstetler, on the other hand, claims that Treece told him that she was connected to an Eastern Tennessee crime family and threatened that unless the charges against her husband were dropped, he would be shot and his house would be blown up.

After the meeting, Hochstetler informed his supervisor and the State's Attorney's Office of Treece's threats, and obtained an order from a judge dated September 30, 1991, authorizing the police to record his conversations with Treece. They met again at the Naperville train station on October 1, 1991, and Hochstetler was wired with a recording device. During the conversation, Treece told Hochstetler that "I don't think your family is in danger, I think it is a fact." One week later, Hochstetler taped a phone conversation with Treece, during which she repeated that his family was in a state of danger.

On October 13, 1991, Hochstetler observed Treece in the Naperville Police Department parking lot while she appeared to be filming the license plate numbers of the police officers' personal automobiles with a video camera. Treece contends that she was filming geese on a nearby lake and did not notice the "No Trespassing-Authorized Vehicles Only" sign. Contrary to her assertions, Treece can be heard on the video tape stating, "Keep fearing Steve, cause it will happen. Word has already come down." Another encounter occurred two days later when Treece attempted to take pictures of Hochstetler and his family during a charity go-cart race. Hochstetler filed

police reports detailing these incidents and informed the State's Attorney's Office, which in turn decided to seek charges against Treece.

Based on these incidents, a DuPage County, Illinois grand jury returned a state criminal indictment charging Treece with three counts of intimidation under 720 Ill. Comp. Stat. 5/12-6(a)./5 At trial, the state's attorney had difficulty prosecuting her and after two mistrials, nolle-prossed the case. Six months later, Treece filed a section 1983 civil rights suit in federal court, alleging that Hochstetler and the City of Naperville had maliciously prosecuted her. As mentioned previously, according to the stipulation in the record, the City "agree[d] to entry of judgment against [itself]" should "the jury enter[ ] a finding of liability against Defendant Hochstetler." The judge accordingly bifurcated the trial, removing the City from the trial, and ordered Treece's section 1983 action against Hochstetler to proceed. During trial, in spite of an objection on the part of Treece, the court excluded evidence in so far as Hochstetler's prior "bad acts," which Treece claims would have established that he engaged in a pattern of soliciting bribes and falsely charging individuals with crimes when the bribes were not paid./6 The jury returned a verdict in favor of Hochstetler, and the judge thereafter entered a judgment on the verdict in favor of Hochstetler and entered a summary judgment in favor of the City, and denied Treece's motion for a new trial. Treece appealed.

## II. ISSUES

On appeal, Treece argues that the court: (1) abused its discretion in excluding evidence of Hochstetler's prior "bad acts"; (2) erred in entering a summary judgment for the City; and (3) abused its discretion when it bifurcated the trial.

## III. ANALYSIS

A. The District Court's Exclusion of Prior "Bad Acts" Evidence

Treece contends that the district court abused its discretion by excluding evidence of Hochstetler's prior "bad acts." We review a court's decision to exclude Rule 404(b) evidence under the abuse of discretion standard. See United States v. Griffin, 194 F.3d 808, 820 (7th Cir. 1999)./7 In reviewing a judge's determination of the admissibility of Rule 404(b) evidence, "we must accord great deference to the [trial] court's assessments because of the judge's first hand exposure to the evidence and

because of the judge's familiarity with the case and ability to gauge the impact of evidence in the context of the proceeding." United States v. Asher, 178 F.3d 486, 494 (7th Cir. 1999).

We utilize a four-prong test to determine the admissibility of prior "bad acts" evidence under Fed. R. Evid. 404(b). Under this test, evidence of prior crimes, wrongs, or acts may be admitted when:

(1)  the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not outweighed by the danger of unfair prejudice.

Asher, 178 F.3d at 492.

Treece argues that the prior "bad acts" evidence satisfies the first and second prongs of the test because it established Hochstetler's "modus operandi"--his "common scheme" or pattern of conduct of soliciting bribes and then filing false police reports to support the trumped up charges when the bribes are not paid. Indeed, we have held that prior "bad acts" evidence is admissible under Rule 404(b) to demonstrate modus operandi. See United States v. Smith, 103 F.3d 600, 603 (7th Cir. 1996). But we have cautioned that "[i]f defined broadly enough, modus operandi evidence becomes nothing more than the character evidence that Rule 404(b) prohibits." Id. Thus, in order to ensure that the evidence at issue is not offered to establish Hochstetler's propensity to commit the acts for which he is accused, "we require that [the prior bad acts] evidence bear 'a singular strong resemblance to the pattern of the offense charged.'" United States v. Robinson, 161 F.3d 463, 468 (7th Cir. 1998) (emphasis added) (quoting United States v. Shackleford, 738 F.2d 776, 783 (7th Cir. 1984)).

Treece's federal suit essentially accused Hochstetler of violating her constitutional rights by demanding a bribe from her in exchange for dropping the charges against her husband. The trial judge found, and we agree, that the record reflects that none of Hochstetler's purported prior "bad acts" revealed any information, much less, any allegations of Hochstetler "shaking down" individuals or demanding a bribe in exchange for the dismissal of the charges. Thus, these incidents are not "sufficiently idiosyncratic to permit an inference of pattern."

See United States v. Hudson, 884 F.2d 1016, 1021 (7th Cir. 1989). Accordingly, because the excluded evidence of Hochstetler's prior "bad acts" did not "bear a singular strong resemblance to the pattern of the offense charged," Robinson, 161 F.3d at 468 (internal quotations omitted), we conclude that the district court did not abuse its discretion in excluding this evidence.


    B. The District Court's Entry of Judgment for the City

    Next, despite the jury's verdict in favor of Hochstetler, Treece baldly claims that the trial court erred in entering a summary judgment thereafter in favor of the City of Naperville because, she contends, the City could still have been found independently liable based on its knowledge of Hochstetler's acts and failure to take action thereafter. Treece's unsupported assertion/8 fails as a matter of law because it is well established in this Circuit that a municipality's liability for a constitutional injury "requires a finding that the individual officer[ ] [is] liable on the underlying substantive claim." Tesch, 157 F.3d at 477. Similarly, in City of Los Angeles v. Heller, 475 U.S. 796 (1986), the Supreme Court held that:

neither Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978), nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm. If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.

Id. at 799 (emphasis added). Indeed, Heller establishes that a city's liability is derivative of its police officer's liability. See id. Likewise, because a jury has determined that Hochstetler was not liable for committing a constitutional deprivation (tort) against Treece, it is impossible under existing case law for the City to be held liable for its knowledge or inaction concerning its officer's activity. See Gossmeyer v. McDonald, 128 F.3d 481, 494 (7th Cir. 1997) ("Here, the Sheriff's Department cannot be found liable because [the officers'] actions did not constitute, nor did they cause, a constitutional tort."); Thompson v. Boggs, 33 F.3d 847, 859 n.11 (7th Cir. 1994) ("Monell expressly holds that there is no cause of action for respondeat superior liability against a

municipal corporation under 42 U.S.C. sec. 1983.").

Indeed, as we held in Estate of Phillips v. City of Milwaukee, 123 F.3d 586, 596-97 (7th Cir. 1997),

[h]aving decided that the officers did not violate the Constitution, we must conclude that neither the City nor [police chief] can be held liable for [the plaintiff's] death. . . . [I]f the [officers] inflicted no constitutional injury on [the plaintiff], it is inconceivable that the [City and police chief] could be liable . . . . Neither the City nor the police officer's supervisor can be held on a failure to train theory or on a municipal policy theory absent a finding that the individual officers are liable on the underlying substantive claim.

No convincing case law has been presented to us (nor have we discovered any) that would compel us to deviate from the law as it now exists. Accordingly, because the jury returned a finding of liability in favor of Hochstetler, we conclude that the district court did not err in entering a summary judgment in favor of the City.

C. The District Court's Bifurcation of the Trial

Finally, Treece contends that the court abused its discretion when it bifurcated the trial, thereby removing the City from the trial and ordering Treece's section 1983 action against Hochstetler to proceed. "The district court has considerable discretion to order the bifurcation of a trial, and we will overturn this decision only upon a clear showing of abuse." Krocka v. City of Chicago, 203 F.3d 507, 516 (7th Cir. 2000) (internal quotations omitted). We have held that "Federal Rule of Civil Procedure 42(b) permits the separate trial of any issue when separation would be in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Berry v. DeLoney, 28 F.3d 604, 610 (7th Cir. 1994) (internal quotations omitted). "Only one of these criteria need be satisfied for a court to order a separate trial." Id.

Here, bifurcation avoided the needless costs and burdens of a second trial, as well as, but not limited to, the waste of the valuable time and resources of the court, and the inconveniencing of witnesses, especially in light of the fact that the City "agree[d] to entry of judgment against [itself]" should "the jury enter[ ] a finding of liability against Defendant Hochstetler." Further, as previously discussed,

under established law, the liability of the City of Naperville was derivative of Hochstetler's liability. See Gossmeyer, 128 F.3d at 494. Thus, we conclude that the trial judge's bifurcation of the trial against Hochstetler and the City was proper and, accordingly, was not an abuse of discretion.

VI. CONCLUSION

We hold that the trial judge did not abuse her discretion when she excluded evidence of Hochstetler's prior "bad acts" and did not err when she entered a summary judgment in favor of the City. We also hold that the court did not abuse its discretion when it bifurcated the trial. The decision of the district court is

Affirmed.

/1 Treece also claimed malicious prosecution and intentional infliction of emotional distress under Illinois state law.

/2 The summary judgment entered in favor of the City is consistent with the well established principle that a municipality is not liable for a constitutional injury unless there is "a finding that the individual officer[ ] [is] liable on the underlying substantive claim." Tesch v. County of Green Lake, 157 F.3d 465, 477 (7th Cir. 1998). The jury returned a verdict in favor of Hochstetler, and thus found no liability on the officer's part.

/3 Otis gave Hochstetler permission to search his truck.

/4 On October 1, 1991, Otis Treece was charged with felony theft, but he later was acquitted of that charge. Thereafter, he was reinstated to his job with the City's Electric Department.

/5 "A person commits intimidation when, with intent to cause another to perform or to omit the performance of any act, he communicates to another, whether in person, by telephone or by mail, a threat to perform without lawful authority any of the following acts: (1) Inflict physical harm on the person threatened . . . ."

/6 But it is interesting to note that among these purported prior "bad acts," nobody accused Hochstetler of "shaking them down" or demanding a bribe. Thus, the trial judge found that Treece "offered no credible purpose for [its] admission," and excluded the evidence in the case. We also note that two of the four alleged

"bad acts" occurred after Treece's indictment on the state charges.

/7 Fed. R. Evid. 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

/8 In her brief, Treece misinterprets the prevailing law on this issue and fails to direct this court's attention to any properly construed case that supports her assertion.