In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-3979

DEVARIS PERRY,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO AND BARTELL
KEITHLEY,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:08-cv-4730 — **Sidney I. Schenkier**, *Magistrate Judge.*

ARGUED SEPTEMBER 16, 2013 — DECIDED OCTOBER 23, 2013

Before KANNE, ROVNER, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.* Bartell Keithley, a Chicago police officer, shot Devaris Perry twice during an encounter that ended in Perry's arrest. Perry was acquitted of the related criminal charges and filed suit against Officer Keithley and the City of Chicago, alleging violations of both federal and Illinois civil rights laws, and seeking indemnification from the City.

The jury rejected Perry's claims. Perry now appeals, asserting that the district court made several evidentiary errors that infected the jury's deliberations. For the reasons detailed below, we affirm the decision of the district court.

## I. BACKGROUND

This case arises from appellant Devaris Perry's arrest and shooting on September 14, 2007. On that morning, Chicago police officers Bartell Keithley and Stephen Watts responded to reports of gunfire at 527 East Browning, a high rise in the Ida B. Wells housing complex on the south side of Chicago. Upon arriving at the scene, two people told the officers that "gangbangers" were running guns and drugs into the building. They also pointed the officers to apartment 501. Keithley and Watts entered the building and knocked on the door of unit 501. No one answered, so Keithley and Watts entered the apartment with their guns drawn. They found Perry inside the apartment and ordered him to get down against the wall. Perry complied after a brief protest. Watts then searched the apartment, finding chunks of crack cocaine, clear Ziploc bags, and razor blades in a bedroom.

When Watts returned from the search, Perry ran for the door, knocking Keithley over in his haste to escape. Perry maintained that he fled because the officers started punching him after he asked what was going on. The officers both testified that they did not punch Perry, but did acknowledge that when Perry rushed into Keithley, Watts struck him with his gun and punched him. Perry successfully escaped and ran down to the third floor. Keithley followed him, gun drawn, while Watts stayed behind to secure apartment 501.

Keithley testified that Perry popped out from behind a corner, rushed toward him, grabbed his shoulders, and tried to grab his gun. Keithley said he tried to punch Perry in the face but instead hit him in the shoulder; at this point his gun went off, striking Keithley in the arm. Perry then attempted to escape behind Keithley, knocking Keithley off-balance in the process. Keithley shot at Perry while falling to the floor. One bullet struck Perry in the thigh, and another struck him in the back.

Perry denied reaching for Keithley's gun, instead contending that Keithley yelled, "Freeze, mother fucker, or I'm going to shoot." Perry said he kept running and felt a bullet rip through his thigh shortly thereafter. He was still able to run, and kept doing so until a second bullet hit his back and brought him to the ground. Perry said he did not know how Keithley was shot, but suggested in a written statement that Keithley had either shot himself or had Watts shoot him.

Watts called an ambulance, which took Perry to Cook County Hospital. A few days later, Perry was transferred to Cermak Health Services in the Cook County Jail. When he arrived at Cermak, he was admitted under the name "Ricky Johnson"; previously, when in Illinois Department of Corrections custody, Perry had provided this alias.

Perry was charged with attempted murder, aggravated battery with a firearm, and disarming a peace officer. A jury found him not guilty of these charges on July 24, 2009.

While the charges against him were pending, Perry filed suit against Officers Keithley and Watts, and against the City of Chicago, claiming violations of both federal and Illinois civil

rights laws. Specifically, Perry's second amended complaint asserted claims under 42 U.S.C. § 1983 against both officers (alleging excessive force, failure to intervene to prevent excessive force, false arrest, and malicious prosecution) and an Illinois malicious prosecution claim. It also sought indemnification of the officers by the City. The claims against Watts were dismissed prior to trial.

Before Perry's civil trial, he filed motions in limine seeking to bar reference to his criminal background, his contemporaneous incarceration on unrelated criminal charges, and his gang membership. The magistrate granted the motions concerning Perry's present incarceration and his gang membership without objection. The court granted in part and denied in part the motion concerning Perry's criminal background, allowing evidence only that Perry was convicted of a crime in 2004 for which he was on parole at the time he was shot.

When trial began on the afternoon of November 8, 2010, Perry asserts that uniformed guards from the Cook County Department of Corrections attended the trial to keep watch over Perry. At the end of that first day, the magistrate remarked, "civilian clothing tomorrow." Perry did not object to the guards' presence, nor to the comment about civilian clothing.

During a sidebar before Perry took the stand, he sought clarification regarding testimony about the name Ricky Johnson. Perry expressed concern that bringing up Ricky Johnson would open the door to other, prior arrests during which he had also used the name. The magistrate ruled that

questioning concerning the use of the alias in other arrests would violate his ruling on the motion in limine to bar evidence of Perry's criminal background. But, he further explained that questioning about the use of an alias during the 2004 arrest was "fair game." Perry then testified on direct examination that he gave the name Ricky Johnson during the 2004 arrest. During cross-examination, counsel for Keithley and the city asked Perry a few additional questions, probing whether Perry gave a fake name during his 2007 arrest following the shooting and how the name Ricky Johnson appeared on Perry's medical records.

Later, Watts testified on direct examination that the people who pointed him to apartment 501 also mentioned that "gangbangers" were running drugs and guns into 527 East Browning. Perry objected, citing the court's ruling on his motion in limine to bar reference to Perry's gang membership. The magistrate permitted the testimony but warned counsel that she was "traipsing into areas of gang activity" and that she was "really operating very close to the edge."

The morning of the final day of trial, one of the jurors ("Mrs. A"), saw the marshals lead Perry from the freight elevator and into the courtroom. At the time, Perry was wearing a suit and tie but was handcuffed in front. He held his hands in such a way that it was not obvious he was handcuffed. The magistrate discussed the matter with both parties, and all agreed that the magistrate should discuss the encounter with Mrs. A. The magistrate asked Mrs. A about the encounter outside the presence of the other jurors, and she acknowledged that she had seen Perry that morning. When the magistrate asked if she had noticed anything in particular

about Perry, Mrs. A responded that she looked down, did not pay attention to Perry or make eye contact, and did not recall anything in particular. She did mention that there were several other people in the hallway with Perry, but also said she did not think anything of it. She had not discussed the incident with the other jurors.

After speaking with Mrs. A, the magistrate discussed the incident with the attorneys. All agreed that nothing further needed to be done, except that the magistrate should instruct Mrs. A not to discuss the incident with the other jurors. The magistrate did so, and closing arguments proceeded as scheduled.

The jury found in favor of defendants Keithley and the City, rejecting Perry's claims. Perry now appeals that verdict.

## II. ANALYSIS

Perry claims that the district court erred in three ways: (1) permitting questioning as to whether he used an alias during the arrest that gave rise to his civil suit, (2) permitting testimony that "gangbangers" were present in the apartment where Perry was found, and (3) allowing Perry to appear surrounded by uniformed guards on the first day of trial, and permitting a juror to see Perry in handcuffs on his way to court.

*A. Questioning about Perry's Alias and Testimony about "Gangbangers"*

Perry first argues the court erred by permitting questioning about Perry's alias and testimony about the presence of "gangbangers" in apartment 501, given its prior in limine

rulings. Perry does not challenge the motions in limine themselves, but rather asserts that the court violated its own rulings by admitting the alias and gangbangers testimony.

Trial courts issue rulings on motions in limine to guide the parties on what evidence it will admit later in trial. As a trial progresses, the presiding judge remains free to alter earlier rulings. *Luce v. United States*, 469 U.S. 38, 41–42 (1984); *Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 565 (7th Cir. 2006). This court reviews a district court's evidentiary rulings for abuse of discretion. *Common v. City of Chicago*, 661 F.3d 940, 946 (7th Cir. 2011). We will reverse only if no reasonable person would agree with the trial court's ruling and the error likely affected the outcome of the trial. *Farfaras*, 433 F.3d at 564 (citations omitted). Thus, a court's determination that a piece of evidence falls within (or outside) a motion in limine will be reversed only if that determination constituted such an abuse. If evidence did not violate the ruling in limine, the court's decision to admit it cannot be an abuse of discretion. *Willis v. Lepine*, 687 F.3d 826, 839 (7th Cir. 2012).

*1. The Alias*

Before trial, the magistrate issued a motion in limine ruling with regard to Perry's criminal background that permitted "only evidence that plaintiff was convicted of a crime in 2004, served a sentence of 17 months incarceration, and was on parole for that offense at the time of the incident at issue in this trial." It was directed only to Perry's "criminal background" and thus did not bar evidence of the arrest that gave rise to Perry's claim. At trial during a sidebar discussing this ruling, the court additionally barred

testimony concerning the use of an alias in any prior arrests, while noting that counsel could still elicit testimony about Perry's use of the Ricky Johnson alias in connection with the 2004 conviction. Later, the magistrate overruled Perry's objection to questioning about whether he used the alias.

Perry argues that the discussion during the sidebar barred any testimony concerning the use of Ricky Johnson during the 2007 encounter with Keithley and Watts because the magistrate prohibited testimony about the use of the alias "in other arrests." (Appellant's Br. at 9–10.) This argument, however, ignores the context of the sidebar discussion. The magistrate was considering his ruling on Perry's criminal *background,* not the use of an alias during the events that led to Perry's civil suit. Perry's counsel himself phrased his concerns in terms of Perry's past arrests. Given this context, we cannot say that the magistrate abused his discretion by later permitting questioning as to whether Perry used an alias during his 2007 arrest.

### 2. *"Gangbangers"*

In the same pre-trial ruling, the magistrate granted Perry's motion to bar reference to Perry's gang membership without objection. Perry argues that Watts's testimony that a bystander told him "gangbangers were running the guns and the drugs up into 527 East Browning" violated this motion in limine and thus the failure to correct it constituted an abuse of discretion by the trial court.

The motion in limine, however, specifically barred reference to Perry's gang membership. It did not address evidence of gang activity in 527 East Browning or apartment

501. Watts's gangbangers statement did not explicitly refer to Perry's own gang membership, and thus did not fall within the prior motion in limine ruling. Although it could be argued that the testimony would have allowed the jury to infer that Perry was also a gangbanger, we reverse for abuse of discretion only where "no reasonable person would agree with the trial court's ruling." *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 875 (7th Cir. 2011).

*B. The Uniformed Guards and Handcuffs*

Perry also argues that the court failed to shield his incarceration from the jury, as the magistrate indicated he would do in a pretrial ruling. Perry asserts that the uniformed guards in the courtroom on the first day of trial and Mrs. A's glimpse of him surrounded by marshals prejudiced him before the jury.

Perry did not object to either event at trial. Thus, at most, we can review his claim for plain error. *Stringel v. Methodist Hosp. of Indiana, Inc.*, 89 F.3d 415, 421 (7th Cir. 1996). In most civil cases, plain error review is unavailable; if a party fails to object at trial, the issue cannot be raised on appeal. *Id.* A narrow exception to this general rule permits review where a party can demonstrate that (1) exceptional circumstances exist, (2) substantial rights are affected, and (3) a miscarriage of justice will result if the doctrine is not applied. *Estate of Moreland v. Dieter*, 395 F.3d 747, 756 (7th Cir. 2005).

Perry attempts to make this showing, but fails on the first and third elements. He suggests that exceptional circumstances existed because he was incarcerated at the time of the hearing, but the magistrate barred all reference to the fact that he was

incarcerated. (Appellant's Br. at 16.) But this "exceptional circumstance" does not provide any explanation for why Perry failed to object at trial. *See Kafka v. Truck Ins. Exchange*, 19 F.3d 383, 386 (7th Cir. 1994) ("[The plaintiff] does not direct us to any exceptional circumstances which caused his failure to object to the questions propounded to him during cross-examination."). Perry does point to a substantial right that may have been affected by the trial court's ruling—his right to a fair trial—but that alone does not necessitate plain error review. *See Stringel*, 89 F.3d at 421–22. As for the third element, Perry does not demonstrate that a miscarriage of justice will occur if the district court's actions are not deemed clearly erroneous. The only evidence that uniformed guards were present on the first day is the magistrate's statement, "civilian clothes tomorrow." Additionally, the magistrate took several steps to guarantee that Mrs. A's sighting of Perry did not infect the jury deliberations. Even though Mrs. A apparently did not notice Perry's handcuffs or the marshals accompanying him, the magistrate clearly instructed her not to discuss the incident with any of the other jurors. Because Perry cannot make the necessary showing, we will not excuse his failure to timely object and will not perform plain error review.

### III. CONCLUSION

For the above reasons, we AFFIRM the decision of the district court.