NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 15, 2018[*]
Decided August 15, 2018

***Before***

MICHAEL S. KANNE, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 17-2386

| | |
|---|---|
| JULIAN J. MILLER, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 09-CV-1012 |
| ALBERT B. GONZALES, *Defendant-Appellee*. | William C. Griesbach, *Chief Judge*. |

**O R D E R**

Julian Miller fled from Albert Gonzales, a police officer from Kenosha, Wisconsin, as Gonzales was questioning him about a stabbing. Gonzales and another officer chased Miller. When Gonzales jumped over a fence, pursuing Miller in the darkness of night, he landed on Miller's face and broke Miller's jaw. Miller sued both officers, contending that Gonzales had intentionally landed on him and thus used excessive force. A jury disagreed and returned a verdict in favor of Gonzales. Miller

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

appeals, arguing that the district judge made erroneous rulings during the trial. Given our deferential standard of review, we affirm the judgment.

This is the second time that we are reviewing Miller's case. Initially, the district court entered summary judgment for the two officers. We vacated the entry of summary judgment for Gonzales, concluding that Miller's testimony could allow a reasonable jury to infer Gonzales's intent to harm Miller. *Miller v. Gonzalez,* 761 F.3d 822, 827–30 (7th Cir. 2014). (The parties since have clarified that the defendant's name is spelled "Gonzales.") The case returned to the district court for trial on Miller's excessive-force claim against Gonzales, and the court recruited counsel for Miller.

The trial revealed the following facts. In the early hours of October 25, 2003, police were searching for a stabbing suspect, and Gonzales came upon Miller. When Gonzales asked Miller if he had seen anyone pass by, Miller became fidgety. Gonzales told him to keep his hands out of his pockets and not to run. Miller did not heed these commands and ran. Gonzales pursued Miller, who passed by another officer investigating the stabbing. That officer, Shane Stange, joined the pursuit. Miller jumped a low chain-link fence and ended up in a small yard, boxed in by another fence and a garage. Stange jumped the fence and ordered Miller to the ground. Gonzales, who was following closely behind, heard Stange yelling at Miller and jumped over the fence to assist him. Gonzales either landed or rolled onto Miller's face, breaking Miller's jaw.

The key dispute at trial involved the fence-jumping. Miller testified that anyone could see through the fence, so Gonzales must have seen Miller passive and motionless on the ground. Therefore, Miller surmised, Gonzales must have purposely jumped over the fence to land on his face. Also according to Miller, after he complained, "You didn't have to break my jaw," Officer Gonzales replied, "I told you not to run." Gonzales testified differently. He said that he could see very little in the dark, jumped the fence in case Miller had attacked Stange, and merely collided accidentally with Miller. Both sides presented expert witnesses to opine about the level and trajectory of force necessary to break Miller's jaw; the experts agreed that Miller's injury did not result from someone jumping directly onto his face.

The parties sought to discredit each other in three ways. First, Gonzales presented to the jury Miller's differing accounts of his injury. While cross-examining Dr. Leon Kazarian, Miller's expert, Gonzales's counsel elicited testimony about materials that the doctor used to prepare his report. These included emergency-room records, which reflect Miller explaining either that he could not "recall details" of the injury or that his injury may have "occurred as a result of him falling on the ground."

Miller did not object to this testimony. Second, Miller wanted to admit evidence that, in a previous excessive-force case in which Gonzales fatally shot a suspect, Gonzales had changed his story about the shooting. Although that case had settled before trial, Miller wanted to argue that the case showed that Gonzales had developed a plan or routine of using excessive force and then lying about it. The district judge ruled that Miller could not introduce evidence from that case. Third, Gonzales sought to introduce evidence of Miller's recent felony convictions for murder, armed robbery, and false imprisonment. The judge worried that naming Miller's crimes would unduly prejudice him, so the judge required that any reference to Miller's criminal history be limited to the fact that he was currently incarcerated for multiple felony convictions.

The trial ended in a verdict for Gonzales, after the court resolved an issue about one juror. While speaking with the district judge before closing arguments, Miller's counsel explained that Miller and "others … noticed that one of the jurors was dozing off" during the first day of the two-day trial. Counsel added that he had not "seen anything like that" during the second day. Other than asking the court "to make a record" of it, Miller raised no objection and asked for no relief. The judge responded that he "didn't notice anything … but … that doesn't mean it didn't occur." The judge saw no "basis for any action." After entry of judgment, the judge allowed Miller to supplement the record with two items: Miller's statement that he saw the juror sleeping during Gonzales's and Dr. Kazarian's testimonies, and a letter from his attorney verifying that he also recalled seeing the juror with his eyes closed a couple of times.

On appeal, Miller first argues that the judge should have admitted evidence of Gonzales's statements from the previous excessive-force case. Even though the district judge gave no reason for excluding this evidence, we review the exclusion for abuse of discretion. *See Duran v. Town of Cicero*, 653 F.3d 632, 644 (7th Cir. 2011). The exclusion was reasonable. First, if Miller wanted to use the evidence to show that Gonzales was a liar, his counsel would have had to offer "extrinsic evidence" of Gonzales's conduct from that case, and Federal Rule of Evidence 608(b) prohibits this. Second, if Miller believed that this one other case suggests that Gonzales has a "plan," *see* FED. R. EVID. 404(b)(2), or "routine," *see* FED. R. EVID. 406, of using excessive force and then changing his story about it, exclusion was justified under Rule 403. This rule permits exclusion of "relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice." That is the situation here. The earlier case—which involved just one other incident—settled without any findings of fact about whether Gonzales had indeed changed his story. Moreover, the spectacle of a fatal shooting would have likely distracted the jury from the facts of this case. Thus, we will not disturb the district

court's "substantial" discretion to exclude this evidence. *Duran*, 653 F.3d at 645; *see Treece v. Hochstetler*, 213 F.3d 360, 363–64 (7th Cir. 2000).

Similarly, we reject Miller's challenge to the admission of his felony convictions. He seems to argue that the Rules of Evidence did not permit the judge to "sanitize" his convictions by admitting them but disallowing reference to his specific crimes—it was all or nothing, he contends, and it should have been nothing. But the Federal Rules of Evidence presume the admissibility of Miller's crimes. *See* FED. R. EVID. 609(a)(1)(A). True, the district judge worried that naming Miller's crimes might prejudice him. But the compromise of admitting a sanitized version of the crimes to lessen that prejudice—referring only to his incarceration for felonies—is permissible and often preferred. *See Old Chief v. United States*, 519 U.S. 172, 174 (1997); *Schmude v. Tricam Indus., Inc.*, 556 F.3d 624, 627 (7th Cir. 2009). Thus the district judge did not abuse his discretion. *See Schmude*, 556 F.3d at 627.

Next we take up Miller's challenge to the admission of the statements that he made in the emergency room after his injury. This challenge goes nowhere because Miller did not object during trial. He must now persuade us (1) that the district judge abused his discretion by admitting the evidence, *see Flournoy v. City of Chicago*, 829 F.3d 869, 876 (7th Cir. 2016); (2) that the error was plain; and (3) that, this being a civil case where plain error is almost never found, "extraordinary circumstances" justify reversal, *Williams v. Dieball*, 724 F.3d 957, 963 (7th Cir. 2013). He cannot. He cites to nothing extraordinary in this case, and we see nothing that plainly required the trial judge to exclude unobjected-to, brief testimony about Miller's statements in the hospital.

Miller next challenges the district court's instructions to the jury. He focuses on the instruction about the elements of an excessive-force claim under the Fourth Amendment. Plain-error review again applies, as Miller never objected to the instructions at trial. *See* FED. R. CIV. P. 51(d)(2); *Walker v. Groot*, 867 F.3d 799, 803 (7th Cir. 2017). Miller seems to contend that the instructions improperly required him to prove that Gonzales intended to use force. But a claim of excessive force *does* require proving the defendant's intent to use force—force must have been "purposely or knowingly used." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). The Seventh Circuit's pattern jury instruction, which the district judge used, incorporates this standard. *See* FEDERAL CIVIL JURY INSTRUCTIONS OF THE SEVENTH CIRCUIT 7.09 & cmt. a, 7.10 (2017). No plain error results from using a pattern instruction that reflects the current state of the law.

Finally, we deal with Miller's contention that he was denied a fair trial because of a juror who may have fallen asleep. A "court has considerable discretion in deciding

how to handle a sleeping juror." *United States v. Freitag*, 230 F.3d 1019, 1023 (7th Cir. 2000). Miller's counsel did not object or request any remedy (like questioning the juror), but instead informed the judge that he merely wished to "make a record." The judge's decision not to take action in light of counsel's acquiescence is therefore reviewed for plain error. *See Perry v. City of Chicago*, 733 F.3d 248, 253–54 (7th Cir. 2013). When counsel raised the issue, he told the judge only that the juror may have "dozed off" for some unspecified period of time. With no further information about the juror's ability or inability to perform his duties (the judge himself having not seen it), the judge did not plainly err by declining to order a new trial sua sponte. *See Freitag*, 230 F.3d at 1023–24. It is true that Miller later filed a statement about the extent of the juror's sleepiness, but he did so after judgment was entered and *without* asking for relief from the judgment or a new trial. Once again, the judge did not plainly abuse his discretion by not reopening the judgment on his own to address Miller's belated allegations. *See Eskridge v. Cook Cty.*, 577 F.3d 806, 809 (7th Cir. 2009) (noting that relief from judgment is "extraordinary remedy").

AFFIRMED