**Thaddeus W. EDWARDS Jr., etc., Plaintiff,**

v.

**Officer Angela THOMAS, et al., Defendants.**

**No. 96 C 8203.**

United States District Court, N.D. Illinois, Eastern Division.

Jan. 7, 1999.

---

Andrew Kopon, Jr., Kopon, Shaughnessy & Spina, Chicago, IL, for Plaintiff.

Brendan S. Power, Chicago Housing Authority, Chicago, IL, for Defendant.

### MEMORANDUM OPINION
### AND ORDER

SHADUR, Senior District Judge.

After the completion of discovery in this 42 U.S.C. § 1983 ("Section 1983") action brought by Thaddeus Edwards ("Edwards") against Chicago Housing Authority ("CHA") Police Officers Angela Thomas ("Thomas"), Arthur Lindsay ("Lindsay"), Dale Mitchell and David Lipinski (collectively "Officers"), counsel for the litigants jointly submitted a proposed final pretrial order ("FPTO") that was then entered by this Court. Thereafter the litigants tendered their respective motions in limine supported by legal memoranda, and each side then responded with a legal memorandum or memoranda in opposition to the other side's motions. This memorandum opinion and order addresses the motions seriatim.

### Edwards' Motions in Limine
*Edwards' Prior Convictions (Dkt. No. 49)*

■ Edwards brought a motion to exclude evidence relating to his prior convictions on two grounds: (1) *as not probative of any fact* and (2) even if probative, as nonetheless highly prejudicial and misleading to the jury. But the first branch of his argument—that such convictions have no probative value because the focus of a Section 1983 action is the reasonableness of the defendant's actions (E. 1st Br.2)[1]—is directly at odds with one of the Federal Rules of Evidence ("Rules"). Rule 609 embodies "[t]he proposition that

1. This opinion cites to the memoranda in support of Edwards' four motions in limine using the shorthand "E. 1st Br.—," etc., and similarly to Officers' responsive memoranda as "O. 1st R. Br.—," etc. Because Officers' 17 motions are all included in one memorandum, the citations to that memorandum will simply read "O. Br.—," and Edwards' responsive memorandum addressed to those motions will be cited as "E. R. Br.—."

2. *Campbell, id.* expresses serious (and entirely proper) doubt as to that premise but concludes (with equal propriety) that it is not the judicial role to decline to apply the Rule on that ground.

3. *Christmas,* 759 F.2d at 1292 upheld the exclusion of the plaintiff's rape conviction because it might have been "more probative on the issue of

felons perjure themselves more often than other, similarly situated witnesses" (*Campbell v. Greer,* 831 F.2d 700, 707 (7th Cir. 1987)),[2] and therefore expressly permits the introduction of a witness' prior felony convictions to impeach his or her testimony.

Of course Rule 609(a)(1) lends conceptual credence to the second branch of Edwards' motion: It requires the Court to evaluate the evidence under a Rule 403 weighing test to determine whether "its probative value is substantially outweighed by the danger of unfair prejudice." That weighing test is at the heart of the analysis here.

E. 1st Br. 3 framed the potential danger of introducing such evidence in an excessive force suit by pointing to language from *Llaguno v. Mingey,* 763 F.2d 1560, 1569 (7th Cir.1985), also quoted in *Geitz v. Lindsey,* 893 F.2d 148, 151 (7th Cir.1990):

[C]ivil rights actions often pit unsympathetic plaintiffs-criminals, or members of the criminal class...against the guardians of the community's safety, yet serve an essential deterrent function.

That however is not an automatic bar—thus *Geitz* itself permitted the introduction of plaintiff's pending charges and prior unrelated convictions after weighing the evidence in Rule 403 terms.

Indeed, in every case Edwards cites involving the issue of prior convictions or misconduct, save *Christmas v. Sanders,* 759 F.2d 1284, 1293 (7th Cir.1985),[3] at least some of the plaintiff's prior convictions or misconduct were admitted either for impeachment purposes or as substantive evidence bearing on

whether Christmas was a 'bad person' and had a propensity to assault women." At issue was whether he made suggestive remarks to the off-duty female officer and began assaulting her before she shot him. Given the factual circumstances, Christmas' prior rape conviction presented a far greater danger of unfair prejudice than Edwards' prior convictions do here. There is no question that Edwards was engaged in selling drugs and that Officers were entitled to arrest him—the issue is only whether they used excessive force while doing so—whereas the entire interaction in *Christmas* would have been clouded by the evidence of the plaintiff's rape convictions.

the reasonableness of the officers' actions. It is useful to examine those cases briefly.

*Wilson v. Groaning,* 25 F.3d 581, 585–86 (7th Cir.1994), another excessive force action, permitted the use of three out of plaintiff's six prior convictions for impeachment purposes. *Wilson* found that the admission of the convictions was not prejudicial because the operative facts occurred while plaintiff was in prison, so the jury would already know he had been convicted of something.

*Crawford v. Edmonson,* 764 F.2d 479, 482–85 (7th Cir.1985) permitted evidence of plaintiffs' prior misconduct with guns to come in as probative of the reasonableness of defendant officer's actions in shooting the boys. Though the issue was viewed as debatable, *Crawford* found that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice where the jury already knew plaintiffs were involved in an armed robbery on the night of the incident.

Even though such a District Court opinion has no precedential force in any event, *Charles v. Cotter,* 867 F.Supp. 648, 655–56 (N.D.Ill.1994) permitted the defendants to cross-examine plaintiff as to his three felony convictions that were less than ten years old, but under Rule 609(b) excluded evidence of three convictions that were more than ten years old. *Charles, id.* at 655–56 found the danger of undue prejudice was lessened by limiting the cross-examination to the crime charged, the date and the disposition.

Here the jury will already know that Edwards sold heroin to the undercover officers before the arrest that resulted in this excessive force claim.[4] Hence admitting evidence of his earlier narcotics convictions—one in 1992 for possession of a controlled substance and one in 1993 for possession of narcotics with intent to deliver—will not place a differ-

ent sort of criminal activity before the jury, thus generating a danger of unfair prejudice that would substantially outweigh the evidence's probative value.[5] This case is similar to such cases as *Wilson* and *Crawford* in that respect. To minimize any potential danger of unfair prejudice, this Court will limit the cross-examination to an identification of each crime charged, the disposition date and the disposition (see *Campbell,* 831 F.2d at 707).

There is of course an added potential of such prejudice identified in *Wilson,* 25 F.3d at 585 (quoting the trial court):

> it might be prejudicial to overload the factfinder... [by] put[ting] in all the convictions because [the jury] might well determine that as a result of having that many convictions, that regardless of how the facts come out, that Wilson is a person not deserving of any relief.

That consideration calls for the exclusion of any evidence of Edwards' earlier crimes of a different nature: convictions stemming from his 1989 guilty plea for burglary or his 1989 guilty plea for possession of a stolen vehicle. Edwards' two most recent convictions suffice for potential impeachment of his credibility at the trial.

*Drug Evidence (Dkt. No. 50)*

■ Edwards' second motion in limine requests that Officers be barred (1) from presenting evidence of Edwards' ingestion of drugs prior to the incident, his sale of drugs to the Officers or his drug screen results and (2) from presenting any documents indicating that the substance he sold that day was cocaine or heroin. Those efforts at obtaining such a blanket exclusion fail.

First Edwards argues that his consumption of drugs before and during his arrest are not relevant because the focus of the case is

---

4. Edwards pleaded guilty to selling heroin that night. As noted in *Charles,* 867 F.Supp. at 656 (citing *Brown v. Green,* 738 F.2d 202, 206 (7th Cir.1984)), Illinois courts treat guilty pleas as prima facie admissions of the facts alleged in the complaint, admissions that may be used against defendants in later proceedings. Under 28 U.S.C. § 1738 this Court must give preclusive effect to state court judgments whenever the courts of that state would do so, so that Edwards's guilty plea does constitute a prima facie admission of the underlying facts.

5. It must be remembered that Rule 609 reflects a policy determination that *any* felony conviction, not just those involving dishonesty or false statement, necessarily bears on a witness' credibility (contrast Rule 609(a)(1) with Rule 609(a)(2)). As an original matter that leaves this Court unpersuaded (see n. 2), but this Court is obligated to apply the Rule as written rather than adhering to its own predilections.

on the reasonableness of the Officers' actions, not on Edwards' own conduct (E.2d Br.2). To that end Edwards cites *Palmquist v. Selvik,* 111 F.3d 1332, 1340 (7th Cir.1997) for the proposition that his consumption of drugs before the police entered the premises should be excluded because it was outside of Officers' presence. But while *Palmquist* did uphold the exclusion of evidence that the plaintiff had a "death wish" that was unknown to the police, the Court of Appeals noted (*id.* at 1341–42, citing *Saladino v. Winkler,* 609 F.2d 1211, 1214 (7th Cir.1979)) that the magistrate judge could have admitted the preseizure evidence of intoxication and possession of marijuana. *Saladino, id.* held that evidence of plaintiff's intoxication was admissible under Rule 403 because it:

> tends to make more probable that the plaintiff acted as the defendant contended he did or that plaintiff otherwise conducted himself in such a manner as to place the defendant reasonably in fear of his life.

In this instance Edwards' prior consumption of drugs and, more clearly, his consumption of the contraband (49 bags of heroin) during the arrest provide weight to Officers' argument that the jury could view those things as significant in determining whether he was "vigorously and actively" resisting arrest (O.2d R. Br.1). Likewise, Edwards' positive drug screen for cocaine opiates confirming his drug use is relevant and admissible. O.2d R. Br. 1–6 and 8–9 provides a thorough explanation of Officers' relevant and proper use of such evidence for their defense that need not be repeated here.

Next, evidence of Edwards' sale of drugs is necessary to Officers' ability to explain the incident. Its probative value in setting the stage for Edwards' arrest substantially outweighs any potentially unfair prejudice, satisfying Rule 403. Without evidence of the drug sale it would appear that Officers arrested Edwards without any reason. And as noted earlier in this opinion, Edwards' guilty plea to the drug sale is admissible as a prima facie admission (see *Charles,* 867 F.Supp. at 656, citing *Brown,* 738 F.2d at 206).

Finally, Officers' Exs. 3 to 14, comprising documents and physical evidence relating to the undercover purchase of heroin (including, for example, the plastic bags that were filled with heroin and chewed by Edwards, tests confirming the substance was heroin, money used to purchase the heroin and the heroin itself), are also admissible. That evidence is relevant to the jury's understanding of what happened to prompt the arrest (the sale of drugs) and what took place during the arrest (Edwards' attempt to conceal or swallow the drugs) and involves no unfair prejudice to Edwards.

It must be understood, however, that these general holdings regarding the admissibility of drug-related evidence are not intended to grant Officers a blank check in terms of using that evidence. Though Edwards' exclusion motion has been denied, it will be left to be determined during the course of the trial whether the manner in which the evidence is presented or the sheer quantity of the evidence is unfairly prejudicial or cumulative under Rule 403.[6]

*Events and Actions after the Incident (Dkt. No. 51)*

Edwards' third motion in limine seeks to bar evidence (1) as to his actions at the hospital emergency room after the arrest and (2) as to the doctors' having prescribed and administered Golytly to cleanse Edwards' body of heroin. Both requests are denied.

■ Edwards' behavior in the emergency room, following so shortly on the heels of his arrest (Thomas testified that it took only a few minutes to transport Edwards to the hospital (Dep.41)), is not so much "after" the alleged excessive force incident as it is part of the continuing interaction between Edwards and Officers (who were present and who claim they were still attempting to subdue and control Edwards and remove the evidence from his mouth) (O. 3rd R. B.2). Thus Edwards' actions are not inadmissible under Rule 404(b)—instead they constitute evidence relevant to whether Edwards resist-

---

**6.** This ruling on admissibility also does not necessarily mean that the exhibits will go to the jury room during jury deliberations. As with all other exhibits, that subject will be addressed during the jury instruction conference following the closing of proofs.

ed arrest and whether Officers' actions were reasonable under the circumstances.

■ Administration of Golytly to Edwards is also relevant to the cause of Edwards' hospitalization and is not unfairly prejudicial. Drs. Lester Wright (Dep.34–35), Yaakov Friedman (Dep.46–47) and Amit Chakravarty (Dep.48) all testified that Edwards' three-day hospital stay was based solely upon his ingestion of 40 bags of heroin, not due to any injuries he might have received from Officers. Evidence as to the medical treatment for the heroin ingestion is therefore relevant to counter a possible argument by Edwards that the Officers' excessive force put him in the hospital for three days.

*Officers' Motions in Limine (Dkt. No. 48)*
*Officers' Prior and Subsequent Acts (also Edwards' cross-motion, Dkt. No. 52)*

■ Edwards moves to admit evidence of five complaints of excessive force against Lindsay. Officers move that those complaints (and all other complaints against Lindsay and the other Officers) be barred. Four of the complaints against Lindsay were not sustained and therefore will not be considered in this analysis (subject to the condition stated in n. 9).[7] Edwards' motion is denied as to those complaints (IGC 94–267, IGC 94–262, IGC 94–318 and CC 97–0019), while Officers' corresponding motion is granted.

Only one excessive force complaint (CC 96–0357) against Lindsay was sustained. It resulted from a December 27, 1996 incident (almost two years after Edwards' January 22, 1995 arrest). *United States v. Zapata,* 871 F.2d 616, 620 (7th Cir.1989) sets out the required Rule 404(b) analysis:

To determine if such evidence is admissible, the district court must engage in a

four-pronged analysis and evaluate whether (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

Edwards says that the sustained complaint is not mere propensity evidence, rather being admissible under the Rule 404(b) exception that permits proof of Lindsay's intent—in this instance his intention to commit assault and battery on Edwards. That contention is consistent with the holding in another Section 1983 action, *Wilson v. City of Chicago,* 6 F.3d 1233, 1238 (7th Cir.1993)(where plaintiff claimed he was tortured into giving a confession, evidence that the same officers had tortured two other suspects was held admissible to show intent—and opportunity, preparation and plan to boot); see also *Young v. Rabideau,* 821 F.2d 373, 379 (7th 1987), citing with approval *Carson v. Polley,* 689 F.2d 562, 572–73 (5th Cir.1982)(a Section 1983 action where an officer's record of loss of temper and hostility toward others was held admissible to show his intent to do harm in the case at bar). Edwards' use of the sustained complaint to show intent therefore satisfies the first element of the *Zapata* formulation.[8]

Prong three of the formulation is readily satisfied. It is unnecessary to draw any inference from the low incidence of sustained complaints against police officers to hold that where such a complaint *is* sustained "the

---

7. In terms of Rule 404(b) alone (before any Rule 403 balancing), *Huddleston v. United States,* 485 U.S. 681, 685, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) stated that evidence of other bad acts "should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." Where a complaint has already been rendered "not sustained," that threshold determination is rendered questionable—although it could well be held that the combination of (1) one sustained complaint with (2) other very similar complaints that were found "not sustained" (a term of art, not to be

confused with an exonerative finding that a complaint was held to be "unfounded") would support the admission of those other complaints as well, to allow the factfinder to evaluate the situation as the *Huddleston* approach counsels.

8. Although the standard for Section 1983 excessive force claims is objective reasonableness rather than a subjective test (a matter mentioned a bit later), Edwards' prayer for punitive damages would appear to make the issue of Officers' intent to do harm relevant on that claim as well.

evidence is sufficient to support a jury finding that the defendant committed the similar act" (*Zapata*, 871 F.2d at 620). And although the second and fourth prongs are somewhat more difficult to satisfy, it takes only a moment to see that they are met here as well.

As to the second component, defense counsel attempt to make much of the fact that the incident addressed in the sustained complaint took place after rather than before Edwards' arrest. But *United States v. Brown*, 31 F.3d 484, 492 (7th Cir.1994) (among other cases) has expressly said that "trial courts may admit evidence of prior or subsequent bad acts" as long as they satisfy the four-prong test. Although to be sure the actions at issue in the sustained complaint occurred almost two years after Edwards' arrest, the striking comparability of the conduct involved (in each instance Lindsay's excessive force allegedly included, among other things, kicking an arrestee in the groin during the arrest (E.Br.9)) makes it "similar enough...to be relevant to the matter in issue" (*Zapata*, 871 F.2d at 620).

Finally, as to the last of the four *Zapata* elements, Officers urge that unfair prejudice will result from the admission of the disputed evidence. They are of course correct in suggesting that the evidence is prejudicial (both because all relevant evidence is prejudicial by definition and because the sustained complaint involved egregious behavior), but the Rule 403 formulation speaks only of "the danger of *unfair* prejudice." That can be avoided by an appropriate cautionary instruction to the jury, to make clear that *it* is to decide whether or not Lindsay committed the similar act (so it is not to be controlled by the administrative determination in that respect).

In sum, Edwards' motion is granted as to the sustained excessive force complaint against Lindsay (CC 96–0357), but is denied as to all other evidence of complaints against Lindsay or any of the other Officers.[9] On the flip side of the same issues, Officers' motion is denied as to the sustained complaint and is granted as to all other complaints.

### References to Defense Counsel

Officers' motion to bar references to their attorneys as "CHA attorneys" or "Housing Authority's Attorneys" is unopposed. This Court never apprises jurors of the law firm or any other affiliations of trial counsel. That motion is granted.

### CHA's Indemnification of Officers

Officers' motion to bar any testimony or evidence suggesting that Officers may be indemnified by CHA for any compensatory damages returned against them is also unopposed. That motion too is granted, but on condition that Officers' counsel may not offer any evidence or tender any argument to the jury suggesting their clients' modest means or the clients' difficulty in being able to respond to an award of such damages.

### Police Regulations/General Orders and Officer Training/Knowledge of Law

■ Defense counsel seek to engage in substantial overkill by moving to bar (1) "[a]ny testimony or evidence regarding police regulations or general orders or suggesting that Defendants or any police officers may have breached or violated any such regulations or orders during Plaintiff's arrest" (O.Br.8) and (2) "information relating to defendant's training or knowledge of the law" (O.Br.9). It is of course true that such violations of regulations or training (if they occurred) would not necessarily equate to violations of Edwards' constitutional rights that form the predicate for his Section 1983 claims against Officers. But it is equally true that any such violations could be both relevant and probative toward Edwards' claim of such violations of constitutional rights.

---

9. Defense counsel are cautioned that they will not be permitted at trial (as for example in closing argument) to attempt to downplay the significance of the evidence as to the sustained complaint by such assertions as, for example, that it was only an isolated incident—a sport—as to Lindsay. This Court's exclusion of two of the similar complaints (IGC Nos. 94–318 and 97–19) that were found "not sustained" at the administrative level has given Lindsay the benefit of the doubt in Rule 403 terms. Unless defense counsel are prepared to commit themselves in advance to the constraint referred to here, this Court would be required to reevaluate the Rule 403 balancing as to those other two complaints (see n. 7).

Objective reasonableness, the standard for excessive force claims (*Graham v. Connor*, 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)), requires an analysis of what a hypothetical reasonable officer would have known and done in light of the circumstances confronting the actual officer in the case. Police regulations, general orders and officer training provide a relevant (although not conclusive) benchmark for making such a comparison. Any potential for the jury's automatically finding regulatory violations to equal constitutional violations can be curbed by appropriate jury instructions. So Officers' blanket motions are denied as tendered, with the subject to be taken up in appropriate fashion at trial.

### Standards Not Defined by Jury Instructions

Officers' next motion proposes that Edwards' counsel be prevented from "[r]eferring to a 'standard of care,' to any duty, to any failure to act, to negligence or to any standard other than the standard defined by the jury instructions for this case." That motion is offered in a vacuum, lacking any support or even speculation as to what Edwards might attempt to do in any of those respects. As such, the motion is inappropriately premature: There has been no discussion of jury instructions, and no context exists for considering the propriety of the proposed exclusions. That motion is denied without prejudice.

### Police "Code of Silence"

Officers request the exclusion of all testimony that police officers in general, or in this case specifically, cover up for each others' conduct through a code of silence. Although Edwards responds that he currently does not intend to introduce such evidence, it remains unknown what testimony could develop at trial. At that point the evidence could be considered in the proper context—but for now the motion is denied without prejudice to its possible future reassertion.

### Evidence of Edwards' Reputation

As O. Br. 10 points out, Rule 608 allows evidence of a witness' good character to be introduced only after the character of the witness has been attacked. Once again we have a motion that, because of its prematurity, is both confusing and unnecessary at this point. It too is denied.

### Police Misconduct Publicity

Officers request that recent publicity regarding allegations of police misconduct or the absence of recording devices during the January 23, 1995 incident be kept from the jury. Edwards correctly points out that questions regarding publicity may well be appropriate during voir dire. Furthermore, it remains unknown what other relevant testimony could develop at trial, when the evidence could be considered in the proper context. At this point the motion is denied without prejudice.

### Undisclosed Witnesses and Exhibits

■ Whether a party may call an undisclosed witness or refer to undisclosed exhibits is essentially controlled by the FPTO, which (among other things) establishes the game plan for trial. Although some exception may arise that would call for further evaluation during the trial, for the present both motions to bar such undisclosed evidence are granted.

### Racial Motivation

Next Officers ask that Edwards be barred from eliciting testimony and from attempting to imply, comment or argue that Officers' conduct was racially motivated. Edwards has responded that he currently does not intend to introduce such evidence. Unless and until some occasion arises to revisit the issue, as would seem unlikely, the motion is granted.

### Sale of Drugs and Probable Cause for Arrest

In part Officers submit motions that are the obverse side of a coin tendered by Edwards and already addressed in this opinion. As stated earlier, Edwards' guilty plea to the drug sale is admissible as a prima facie admission, and it would seem highly doubtful that he could tender admissible evidence that he did not sell or deliver illegal narcotics to Thomas and Lindsay (then acting undercover) on January 23, 1995. To turn to a somewhat related nonissue, Edwards will not be allowed to introduce evidence that the Officers lacked probable cause to arrest him that day, because probable cause is not at issue in this case. Edwards' Complaint did not include allegations that Officers lacked proba-

ble cause, and on August 28, 1998 this Court denied an oral motion to amend the Complaint in that respect. Though the first-mentioned motion must be denied as a purely technical matter (it may perhaps be possible for Edwards to seek to counter the prima facie case on that score), the second motion by Officers is granted.

### Intentional Placement of Heroin Bags in Mouth

Edwards judicially admitted, via his answer to Officers' March 25, 1998 Request to Admit Question 4, that he placed 49 bags of heroin in his mouth when Officers entered the apartment. Accordingly Officers' motion to bar Edwards from arguing that he did not intentionally place multiple packages of heroin into his mouth is granted.

### Pain and Disability Testimony

Officers ask that Edwards be barred from testifying as to any future or permanent disability, including the possibility of future surgery, as well as from giving any medical testimony at all. They invoke *Hiatt v. Finkl*, 132 Ill.App.2d 92, 265 N.E.2d 690 (2d Dist. 1971) in purported support of that proposition, but neither that case nor any other forecloses Edwards from providing any medical testimony at all (indeed, *Hiatt* itself permitted some such testimony by the plaintiff there). For example, Edwards may of course testify both as to his personal knowledge of his condition and as to his doctors' statements about his condition that contribute to his state of mind. Any other possible testimony is more properly evaluated in the context of the trial. Officers' global motion is denied.

### Calling Witness Shainett Haynes

Officers request that Edwards be barred from calling Shainett Haynes ("Haynes") to testify at trial unless that intention is disclosed to them no later than 21 days before the scheduled trial date (neither side now knows Haynes' whereabouts). Because any prospect of locating Haynes is necessarily speculative, Officers' 21-day requirement is denied, but if Haynes *is* located hereafter Edwards will not be allowed to call her as a witness unless Officers are afforded an adequate opportunity to take Haynes' deposition beforehand (this requires, of course, that Edwards must disclose Haynes' current address or location to the Officers as soon as he or his counsel learn it).

### *Conclusion*

As stated earlier, Edwards' motions embodied in Dkt. Nos. 50 and 51 are denied, while Edwards' motions embodied in Dkt. Nos. 49 and 52 are granted in part and denied in part. Because all of Officers' motions in limine are included in Dkt. No. 48, those motions are granted in part, denied in part and deferred in part for the reasons stated in this opinion.