In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3277

Emmanuel Mensai Okai,

Plaintiff-Appellant,

v.

Lieutenant Kelly Verfuth,
Robert Zachary, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 96-047--G. Patrick Murphy, Chief Judge.

Argued September 6, 2001--Decided December 21, 2001


  Before Coffey, Kanne, and Evans, Circuit
Judges.

  Coffey, Circuit Judge.  Emmanuel Mensai
Okai filed suit under 42 U.S.C. sec. 1983
and 42 U.S.C. sec. 1985(3) alleging that
certain correctional officers at the
Federal Correctional Institute in
Greenville, Illinois, beat him while
transporting him between housing units on
October 25, 1995. Okai was moved after
other prisoners had rioted on October 20,
requiring that a number of prisoners be
relocated in order that the prison
authorities might repair the damage to
several cell blocks. Shortly after the
riot, Lieutenant Kelly Verfuth and
Officer Robert Zachary both were
suspended for reasons undisclosed in the
record. Okai was desiring of introducing
evidence of Verfuth's and Zachary's
suspensions from their prison guard
positions in order that he might
demonstrate their respective motives to
assault him, but the trial judge refused
to allow such evidence without a proper
showing of its relevancy. A jury returned
a verdict in favor of the defendants, and
the plaintiff-appellant Okai appeals,
arguing that he is entitled to a new
trial because the trial judge abused his
discretion when precluding him from
introducing evidence of Lieutenant
Verfuth's and Officer Zachary's

suspensions following the riot. We affirm.

I.  Factual Background

   On October 20, 1995, inmates at FCI-Greenville rioted and damaged three cell blocks--H3A, H3B and H2B. As a result, prison officials shuffled housing assignments in order that they might facilitate the necessary repairs. Even though Okai was housed in cell block H4A and had not participated in the riots, prison officials decided to reassign him to the Special Housing Unit ("SHU"). Okai alleged that the defendants, Lieutenant Verfuth, Officer Zachary, Officer Gilbert, Officer Martin, Case Manager Pottios, and Officer Phillips beat him without any justification while transferring him to the SHU.

   According to Okai, defendants Zachary, Phillips, Pottios, and Gilbert entered his cell on October 25, 1995, and thereafter Officer Zachary slammed him against the prison wall. Okai claimed that Zachary stood behind him and taunted him, repeating "I got you now." Okai alleged that after the initial assault he was handcuffed and walked down the steps of the housing unit, where Lieutenant Verfuth met the officers. Okai alleged that Verfuth, upon being informed that Okai had been resisting the officers' efforts to relocate him, sprayed him with mace or pepper spray causing him to fall to the ground. Okai claimed that after he fell to the ground, the officers began to kick him. Okai claimed that the officers repeatedly beat him on the way to the SHU. That evening, Okai informed a physician's assistant in the SHU that he needed a doctor to examine his alleged injuries resulting from the assaults, though he was not seen at that time./1

   During discovery Okai learned that other inmates had filed administrative charges, and eventually lawsuits, against Lieutenant Verfuth and Officer Zachary in which they complained that Verfuth and Zachary had engaged in improper conduct against other inmates during the relocation of prisoners after the October 20 riots. Okai also learned that Verfuth and Zachary had been placed on home duty with pay for approximately six months following the riot. Further, Okai also learned that Verfuth was suspended for 20

days and Zachary for 30 days. Okai believed that Verfuth's and Zachary's suspensions were related to their behavior during or after the riots and sought to introduce evidence of the suspensions at trial.

Prior to trial, the defendants moved in limine to exclude all evidence related to the suspensions of Lieutenant Verfuth and Officer Zachary. The defendants argued that suspensions for conduct not involving Okai lacked relevance, except for the improper purpose of suggesting they treated him in conformity with their misconduct involving other prisoners. In support Verfuth and Zachary submitted affidavits in which they admitted being suspended after several inmates complained of being abused during their transfers from one prison unit to another, but denied being involved in Okai's transfer at any time.

Okai responded, arguing that the evidence was admissible to establish the defendants' motive to beat him, as well as their identity, under Federal Rule of Evidence 404(b). Okai speculated that his history of filing administrative complaints provided a motive for the defendants to beat him and that during the moves to the SHU the guards generally retaliated against all prisoners they suspected of having participated in the riots. Furthermore, Okai contended that evidence of the suspensions would be proper to establish the identity of the officers that had allegedly beaten him.

The trial court inquired of Okai as to whether he could provide any evidence that Lieutenant Verfuth and Officer Zachary were disciplined as a result of any of his complaints. Okai offered none, but added that the defendants had yet to satisfy his discovery requests for the disciplinary reports underlying the suspensions. The trial court asked Verfuth's and Zachary's defense counsel whether any complaint filed by the plaintiff, Okai, factored into the suspensions of Verfuth or Zachary and was advised to the contrary. Okai never did present the disciplinary reports to the trial judge for an in camera review. Accordingly, the trial judge excluded evidence of Verfuth's and Zachary's suspensions, ruling that they were not relevant to establishing a matter at

issue in trial.

During the three-day jury trial, Okai called three inmates to testify that they had witnessed the officers beat Okai while transporting him to the SHU. In response to the inmates' testimony, Officers Gilbert, Martin, Pottios and Phillips all testified that they had played no role in the transfer of Okai form his cell in block H4A to the SHU. In fact, the shift log revealed that Officer Martin had not been on duty during the evening of October 25 at the time Okai claimed to have been beaten while being transferred. Okai called an additional inmate to rebut the defendants' claim that they had not taken part in his move. After the three-day jury trial, the jury returned a verdict in favor of the defendants.

## II. Issues

On appeal, Okai argues that the trial court erred when it excluded evidence of Lieutenant Verfuth's and Officer Zachary's suspensions following the riot. Okai again contends that evidence of Lieutenant Verfuth's and Officer Zachary's suspensions was relevant to establish the motive, opportunity, and identity of his attackers.

## III. Analysis

We review a trial court's evidentiary ruling under Rule 404(b) excluding evidence of other bad acts under the abuse of discretion standard. Treece v. Hochstetler, 213 F.3d 360, 363 (7th Cir. 2000). "'The district court's determination of the admissibility of evidence is treated with great deference because of the trial judge's firsthand exposure to the witnesses and the evidence as a whole, and because of his familiarity with the case and ability to gauge the likely impact of the evidence in the context of the entire proceedings.'" United States v. Denberg, 212 F.3d 987, 992 (7th Cir. 2000) (quoting United States v. Curry, 79 F.3d 1489, 1495 (7th Cir. 1996)); see also United States v. Moore, 115 F.3d 1348, 1354 (7th Cir. 1997); United States v. Lloyd, 71 F.3d 1256, 1264 (7th Cir. 1995). Because of the special deference we give to the trial judge's evidentiary rulings, we will not reverse unless "the record

contains no evidence on which [the trial judge] rationally could have based [his] decision." United States v. Walton, 217 F.3d 443, 449 (7th Cir. 1999). "Only in extreme cases are appellate judges competent to second-guess the judgment of the person on the spot, the trial judge," and this is not one of them. United States v. Fawley, 137 F.3d 458, 466 (7th Cir. 1998) (internal quotations omitted).

The Federal Rules of Evidence prohibit the use of "other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Such acts, however, are admissible if offered for other purposes, such as motive, intent, plan, or opportunity. Fed. R. Evid. 404(b); Treece, 213 F.3d at 363 n.7. Trial judges are to apply a four-prong test to determine the admissibility of other bad acts. Treece, 213 F.3d at 363. First, proof of the other act must be directed towards establishing a matter in issue other than the defendant's propensity to commit like conduct. Second, the other act must be of recent vintage and sufficiently similar to be relevant to the matter in issue. Third, there must be a sufficient amount of evidence for the factfinder to conclude that the similar act was committed. And fourth, the probative value of the evidence must not be outweighed by the danger of unfair prejudice. Id.

With regard to the first prong, Okai initially argues that evidence of Lieutenant Verfuth's and Officer Zachary's suspensions following the October riot was admissible because it serves to establish the defendants' motive to retaliate against all of those inmates they suspected had participated in the riots or disliked for other reasons, including Okai./2 Okai speculates that the numerous grievances he had filed before the riots caused the officers to dislike him. According to Okai's theory, the officers took advantage of the post-riot transfer procedures as an opportunity to exact revenge against him for the filing of those grievances. In support of his motion to admit the evidence, Okai suggests that Rule 404(b) permits a plaintiff in an excessive force action to introduce at trial disciplinary reports that concern prior instances of excessive

force used by an officer. See Wilson v. City of Chicago, 6 F.3d 1233, 1238 (7th Cir. 1993); Edwards v. Thomas, 31 F. Supp. 2d 1069 (N.D. Ill. 1999).

In Wilson, the trial judge excluded evidence that officers had interrogated another suspect using an electroshock device nine days before the plaintiff alleged that they had interrogated him in that manner. Wilson, 6 F.3d at 1238. In noting that the trial judge erred in excluding evidence of the officer's previous interrogation methods, we noted that 404(b) evidence is admissible to establish "intent, opportunity, preparation, and plan." Id. In Edwards, the trial judge, relying primarily on Wilson, allowed the plaintiff to use evidence of a sustained excessive force complaint against the defendant-police officer in order to establish the defendant-officer's intent to use excessive force during his interrogation of the plaintiff. Edwards, 31 F. Supp. 2d at 1074. In both cases, the plaintiffs had actual evidence, in the form of sustained complaints or potential witness testimony, that they hoped to introduce. But a reading of those cases reveals that they do not stand for the proposed broad and expanded principle that a trial judge must allow a plaintiff to introduce evidence of prior disciplinary reports against an officer in the context of an excessive force action. Rule 404(b) involves a discretionary decision for which the trial judge is best suited because of "his familiarity with the case and ability to gauge the likely impact of the evidence in the context of the entire proceeding." Denberg, 212 F.3d at 992; see also Treece, 213 F.3d at 363.

In this case, the trial judge specifically inquired of Okai's counsel whether he had any evidence in support of his theory that the officers were suspended for retaliating against various prisoners, including Okai, after the riot. Okai's counsel responded that he did not "know why they were suspended . . . [and] whether [their suspensions] involved [Okai]." Federal Rule of Evidence 103 provides that "error may not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the party is affected" and "the substance of the evidence [excluded] was made known to the court by offer or was

apparent from the context within which questions were asked," and there is no evidence that Okai met this standard. Fed. R. Evid. 103(a)(2). A party who complains about the exclusion of evidence is required to demonstrate with an offer of proof that the evidence would have been helpful. J.H. Desnick, M.D. v. American Broadcasting Co., Inc., 233 F.3d 514, 520 (7th Cir. 2000). Although a party need not make a formal offer of proof, he must at a minimum make known to the trial judge the substance of the evidence he hopes to present. United States v. Jackson, 208 F.3d 633, 636-37 (7th Cir. 2000); Young v. Rabideau, 821 F.2d 373, 376 (7th Cir. 1987).

Unlike the plaintiffs in Wilson and Edwards, Okai failed to make an offer of proof detailing the substance of the dis ciplinary reports, much less whether they established that the officers improperly retaliated against prisoners after the riots. Indeed, Okai admitted that he did not "know why they were suspended." See Wilson, 6 F.3d at 1237-38; Edwards, 31 F. Supp. 2d at 1074; see also Medcom Holding Co. v. Baxter Travenol Lab., Inc., 106 F.3d 1388, 1395 (7th Cir. 1997) (requiring plaintiff to file an offer of proof in attempt to introduce 404(b) evidence); United States v. Martinez, 988 F.2d 685, 700 (7th Cir. 1993) (holding that trial court's exclusion of 404(b) evidence on grounds of failure to make a proper offer of proof was justified); United States v. Sullivan, 911 F.2d 2, 7 (7th Cir. 1990) (requiring government to make an offer of proof concerning Rule 404(b) testimony); McCluney v. JOS. Schlitz Brewing Co., 728 F.2d 924, 929 (7th Cir. 1984) (requiring plaintiff to submit offer of proof in attempt to introduce 404(b) evidence).

Okai suggests that he was not required to make an offer of proof because the officers admitted to having been suspended. But merely because the officers were disciplined fails to shed any light upon the reasons for the officers' suspensions, and it certainly does not compel one to conclude that the officers were suspended because they retaliated against inmates after the prison riot, much less this particular inmate. The officers could have been suspended for any number of plausible reasons. In other words, Okai failed to

give any reason at all as to why the officers were suspended or how those suspensions might have been connected to their motive to retaliate against him. Without this information, the trial judge had no way of determining whether the officers' suspensions would be relevant to establish their motive to assault Okai. Cf. United States v. Harvey, 959 F.2d 1371, 1374-75 (7th Cir. 1992) (excluding evidence where party seeking its admission made only vague response regarding its admissibility).

Despite Okai's failure to provide the court with copies of the disciplinary reports or any other reliable official information regarding the basis for and nature of the officers' discipline, the trial judge did undertake a careful review of the applicable case law as applied to the facts before him in an attempt to assess the viability of Okai's theory. The only evidence regarding the substance of the disciplinary reports and the nature of the officers' suspensions came in the form of affidavits from Lieutenant Verfuth and Officer Zachary. In those affidavits, both officers averred that their suspensions were unrelated to anything that happened to Okai. Although Okai suggests that his failure to provide the trial judge with a copy of the disciplinary reports was caused by the defendants' refusal to produce them, the record reveals that defendants informed Okai that the reports were not in their possession but instead were in the possession of the Bureau of Prisons, and Okai never sought production of them. In short, Okai, even after being advised as to how to obtain the documents he sought, never made a proper effort to obtain copies of the disciplinary reports in order that he might test the veracity and merit of his theory. Without knowledge of the substance and content of the disciplinary reports, it is impossible for Okai's theory to be based on anything but mere speculation. He failed to present any evidence whatsoever to establish why Verfuth and Zachary were suspended. On the other hand, both Verfuth and Zachary filed identical affidavits in which they recite that they were not involved in Okai's transfer from one cell unit to another. In the absence of a scintilla of evidence to demonstrate that the suspensions of Lieutenant Verfuth and Officer Zachary were relevant

to establish their motive for allegedly beating the plaintiff, we conclude that the trial judge did not abuse his discretion in excluding the evidence of the suspensions.

Okai also argues that the evidence of the discipline given to Verfuth and Zachary would be relevant to show identity. This argument is also untenable because there was no question as to the identity of the officers who allegedly assaulted him--Verfuth and Zachary never presented the defense that Okai had mistaken them for other officers. Rule 404(b) requires that the evidence be directed at establishing a matter at issue. Treece, 213 F.3d at 363; United States v. Robinson, 161 F.3d 463, 467 (7th Cir. 1998).

IV.   Conclusion

At trial, Okai failed to submit any evidence to establish that the suspensions of Lieutenant Verfuth and Officer Zachary would have been relevant to establish a matter at issue other than their alleged propensity to commit thealleged offense. Okai never provided the trial judge with the opportunity to assess the viability of Okai's theory that the officers were motivated by the prison riot to exact revenge on inmates they disliked. We are convinced the trial judge made a principled exercise of discretion in ruling to exclude evidence of the officers' suspensions.

AFFIRMED.

FOOTNOTES

/1 Okai's medical records were made part of the record. The records establish that Okai had made numerous complaints about back pain since August 1994. On November 2, 1995, eight days after he was allegedly assaulted, Okai was seen by a prison nurse. Okai complained of lower back pain, but made no allegation of having been assaulted. On November 22, 1995, Okai was seen by a prison physician because he complained that his back pain had caused him to fall and to suffer a cut and bruise above his left eye, but again made no allegation of having been assaulted. Throughout 1996, Okai continued to complain of lower back pain. On January 2, 1997, after he had been transferred to FCI-Oxford, Okai told a prison physician at that facility that he had been experiencing depression, anxiety, and difficulty

sleeping, all stemming from the alleged October 25, 1995, assault.

/2 We note that, even if Okai had presented evidence to establish that Lieutenant Verfuth and Officer Zachary were suspended as a result of improper treatment of other inmates, Okai failed to present any evidence that would link the suspensions of the officers to any misconduct they allegedly committed against Okai. Furthermore, Okai failed to offer any explanation why the suspensions of Verfuth and Zachary would be relevant to the other defendants--Officers Gilbert, Martin, and Phillips and Case Manager Pottios.