UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued May 1, 2006
Decided July 11, 2006

**Before**

Hon. FRANK H. EASTERBROOK,  *Circuit Judge*

Hon. DANIEL A. MANION,  *Circuit Judge*

Hon. DIANE S. SYKES,  *Circuit Judge*

No. 05-3345

ANGEL RODRIGUEZ,
     *Plaintiff-Appellant*,

  *v.*

JON WOODALL,, CITY OF
CHICAGO, and ERNEST
HALVORSEN,

   *Defendants-Appellees*.

Appeal from the United States
District Court for the Northern
District of Illinois, Eastern Division

No. 03 C 3880

**Matthew F. Kennelly**, *Judge*.

## O R D E R

A Chicago jury convicted Angel Rodriguez for the murder of Ibrahim Zayed, the owner of a convenience store on the city's west side.  The Illinois Court of Appeals reversed Rodriguez's conviction, concluding that the prosecution had failed to prove the identity of the murderer beyond a reasonable doubt.  Rodriguez then filed this action in federal court under 42 U.S.C. § 1983 against two police officers involved in the Zayed murder investigation and their employer, the City of Chicago. Rodriguez asserted that the police officers, Ernest Halvorsen and Jon Woodall, infringed his right to a fair trial by improperly pressuring the sole eyewitness to the

crime.  At trial, the district court dismissed Halvorsen at the close of Rodriguez's evidence, and the jury decided in favor of Woodall and Chicago.  Rodriguez only appeals the jury's verdict.  We affirm.

**I**

On November 24, 1996, a man entered the Karlov convenience store in Chicago and shot Ibrahim "Billy" Zayed, its owner, killing him. Andrew Bolton, one of the store employees, was the sole witness to the murder.  He described the murderer to police, who produced a composite sketch.

A little over a month later, Detective Ernest Halvorsen was assigned to the Zayed murder investigation. While showing Bolton an array of photographs, Halvorsen learned from Bolton that he had seen the slayer again about a week after the murder but had not reported the sighting out of fear. Bolton told Halvorsen that the man was loading a snowblower onto the back of a truck in front of a nearby store. Following this lead, the next day Halvorsen talked to that store's owners, who corroborated Bolton's story about the snowblower.  The owners' description of the man largely agreed with Bolton's description of the murderer, and, upon being shown the police composite sketch from the time of the murder, both agreed it was a close fit, although they thought the man's nose was bigger.

Knowing that the predominant gang in the area was a gang by the name of the Insane Unknowns, Halvorsen attempted to retrieve a police book of photographs of the members of that gang to compare to the sketch and description. The book, however, had been purged,[1] which temporarily halted Halvorsen's investigation. The investigation resumed in March of 1997, when a drug suspect mentioned that a man named "Flaco" killed an Arab grocer, according to the word on the street. Upon receiving this tip, Halvorsen confirmed that Zayed was the only person killed in a grocery store in 1996 and 1997 in that area. Halvorsen eventually learned from other detectives that a member of the Spanish Cobras gang, Angel Rodriguez, went by the name Flaco and lived near the area of the shooting. Halvorsen then compared an arrest picture of Rodriguez with the composite sketch of the murderer and noticed striking similarities. Halvorsen also had the opportunity to observe Rodriguez in person; one night on patrol, Halvorsen's partner pointed out Rodriguez, who, according to Halvorsen, "was remarkably close to the description provided by Andrew Bolton."

---

[1] Halvorsen's testimony does not illuminate why the police department eliminated this book from its files.

On March 16, 1997, Halvorsen met with Bolton again to conduct another photo array, this time including a picture of Rodriguez in the group. After examining the six pictures, Bolton identified Rodriguez as the shooter, telling Halvorsen that he was positive about it. Halvorsen and other police officers then arrested Rodriguez on an arrest warrant for an unrelated traffic violation on March 23, 1997. Halvorsen was unable to locate Bolton and another potential witness, Tyrone Reed, that night for a lineup. As he was scheduled to appear in court the next day, Halvorsen asked a sergeant to assign another detective to conduct a lineup involving Rodriguez. The task fell to Detective Jon Woodall.

According to Bolton, during the lineup the next day, Bolton initially commented that Rodriguez looked like Zayed's murderer, though he remembered Rodriguez as smaller at the time of the shooting. Woodall told Bolton that the police had been holding Rodriguez for several months and he picked up some weight. Woodall then "pressured" Bolton to select Rodriguez as the shooter, telling Bolton to look at Rodriguez and informing him that Rodriguez had a long criminal history in the neighborhood. Bolton then identified Rodriguez as the murderer.

Based on Bolton's identification, Rodriguez was charged with murder and convicted. During the criminal trial, Bolton testified that Rodriguez was the shooter. In August 2000, the Illinois Court of Appeals reversed the conviction, however, concluding that the prosecution had not met its burden. Specifically, the court emphasized the testimony of the owners of the store where Bolton saw the shooter with a snowblower, who stated that Rodriguez was not the man in their store that day. After several years in jail, Rodriguez was free.

Upon regaining his liberty, Rodriguez discovered that Bolton had been pressured during the lineup and initiated this lawsuit against the detectives and the City of Chicago, their employer, claiming a violation of his right to a fair trial under 42 U.S.C. § 1983. As part of the civil suit, Bolton was deposed and, during this deposition, stated that, despite Woodall's interference, he properly picked Rodriguez as Zayed's killer. At trial, the district court dismissed Halverson from the suit at the close of Rodriguez's evidence, leaving only Woodall and Chicago. The jury found in favor of the defendants. Rodriguez now appeals the jury verdict in favor of Woodall and Chicago.

II

On appeal, Rodriguez advances three lines of attack. First, he claims that no reasonable jury could have found in favor of the defendants, which we take as a sufficiency of the evidence challenge. Second, he argues that the district court

abused its discretion when it limited the admission of certain evidence relating to Woodall.  Third, he asserts that the district court erred  in instructing the jury instructions as to the proper burden of proof.

A

As an initial matter, Rodriguez waived his sufficiency of the evidence argument.  In his opening brief before this court, Rodriguez failed to cite any legal authority to support his cursory argument, and, in his reply brief, he chose not to address this issue at all.  Failure to support one's point with proper legal authority constitutes waiver. *See, e.g.*, *Weinstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005); *Boomer v. AT&T Corp.*, 309 F.3d 404, 422 n.10 (7th Cir. 2002); *Griffin v. City of Milwaukee*, 74 F.3d 824, 828 (7th Cir. 1996).

Moreover, even if we overlooked this briefing defect, we have no authority to consider Rodriguez's argument that no reasonable jury could find for the defendants based on the evidence.  Rodriguez failed to move under Federal Rule of Civil Procedure 50(a) for a directed verdict at the close of the evidence.  In the absence of a timely motion under Rule 50(a) challenging the sufficiency of the evidence, we cannot review the jury determination of an issue. *See, e.g.*, *Van Bumble v. Wal-Mart Stores, Inc.*, 407 F.3d 823, 827 (7th Cir. 2005); *Savino v. C.P. Hall Co.*, 199 F.3d 925, 931 (7th Cir. 1999).  Rodriguez also failed to make a post-verdict motion under Federal Rule of Civil Procedure 50(b) to challenge the sufficiency of the evidence at that juncture.  "This Court has concluded that, '[i]n the absence of such a motion' an 'appellate court [is] without power to direct the District Court to enter judgment contrary to the one it had permitted to stand.'" *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 126 S. Ct. 980, 985-86 (2006) (quoting *Cone v. W. Va. Pulp & Paper Co.*, 330 U.S. 212, 218 (1947)).[2]  Each failing is fatal.  Even absent waiver, therefore, this court still cannot review Rodriguez's sufficiency of the evidence claim.

B

Rodriguez next argues that the district court should not have limited his use of certain evidence regarding Woodall.  Specifically, Rodriguez wanted to present evidence concerning an arrest in which Woodall participated.  In March 1998, approximately a year after the arrest of Rodriguez, Woodall and several other

---

[2] While Rodriguez made a motion under Federal Rule of Civil Procedure 59 for a new trial, he did not raise any sufficiency of the evidence claims in it.

Chicago police officers arrested two men for possession of cocaine. One of the men informed the police officers that he knew of a vehicle in the police impound lot with a hidden compartment containing cocaine. Acting on this information, the officers retrieved six kilograms of cocaine from the impounded car's hidden compartment, keeping four kilograms for themselves. They subsequently planted two kilograms of cocaine on the second man from the original arrest so that he would be charged for possessing a greater amount of cocaine. Woodall received $9,500 from the sale of cocaine, but he was convicted of conspiracy in 2003. While the district court permitted Rodriguez to use Woodall's subsequent drug conspiracy conviction to impeach Woodall's credibility under Federal Rules of Evidence 608(b) and 609, it refused Rodriguez's request to introduce it as evidence of motive or knowledge relating to Woodall's alleged coercion of Bolton's identification of Rodriguez. We review this decision for an abuse of discretion. *See Okai v. Verfuth*, 275 F.3d 606, 610 (7th Cir. 2001); *Treece v. Hochstetler*, 213 F.3d 360, 363 (7th Cir. 2000).

Rodriguez believes that the district court should have admitted this evidence without limitation under Federal Rule of Evidence 404(b), which generally bars evidence of "other crimes, wrongs, or acts" when introduced "to show action in conformity therewith." Despite this broad prohibition, a district court may introduce evidence of bad acts if: (1) the evidence establishes a matter in issue other than a person's propensity to commit a crime; (2) the evidence shows that the other acts are similar enough and close enough in time to be relevant; (3) the evidence is sufficient to support a jury finding that the person committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by its prejudicial effect. *See Okai*, 275 F.3d at 610-11.

Rodriguez claims that Woodall's involvement in the drug conspiracy establishes knowledge or motive in his case. It is difficult to see how. The fact that Woodall used his position to participate in the drug conspiracy reveals no special knowledge or insight into rigging a lineup, the pertinent issue here. Likewise, a drug conspiracy does not supply Woodall with any motive to frame a man for an unrelated murder. The chronology here punctuates this lack of motive—the comments at the lineup occurred nearly an entire year before Woodall began his participation in the drug conspiracy. Rodriguez defines knowledge and motive much too broadly. In actuality, Rodriguez does not seek to present evidence of motive or knowledge, but evidence of propensity to commit bad acts. This is prohibited. The district court did not abuse its discretion in admitting the drug conspiracy for the limited purpose of challenging Woodall's credibility.

C

Rodriguez finally contends that the district court erred in instructing the jury regarding the burden of proof. In particular, he objects to the district court's instruction that he needed to prove by a preponderance of the evidence that "Rodriguez would not have been convicted of murder if this evidence [of Woodall's actions in the lineup] had been disclosed." Rodriguez views his case as one under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and argues that the district court erred in crafting the instruction because *Brady* and its progeny merely require the demonstration of a reasonable probability of a different result in the criminal trial to show a *Brady* violation.[3]

We review a jury instruction de novo to determine whether it provides a fair and accurate summary of the law, but defer to the district court to craft the actual instruction. *See Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). We first decide whether the instruction misstates the law or fails to convey the relevant legal principles in full. *See Byrd v. Ill. Dep't of Pub. Health*, 423 F.3d 696, 705 (7th Cir. 2005).[4] If the instruction is inadequate, we determine whether it confused or misled the jury, causing Rodriguez prejudice. *See id.* The challenged jury instruction in this case provides that in order to prevail, Rodriguez needed to prove by a preponderance of the evidence: (1) "that Mr. Woodall intentionally induced Andrew Bolton to identify Mr. Rodriguez as the person who murdered Ibrahim Zayed"; (2) "that Mr. Woodall intentionally concealed that fact from the prosecutors

---

[3] It is not at all clear that Rodriguez's case even involves a *Brady* claim. *Brady* stands for the proposition that the prosecution must turn over any material, favorable evidence to the defense. *See, e.g., Ienco v. Angarone*, 429 F.3d 680, 683 (7th Cir. 2005); *United States v. Grintjes*, 237 F.3d 876, 880 (7th Cir. 2001). At its core, *Brady* prevents the police and prosecution from suppressing evidence in their possession that would be helpful to the defense. *Kyles v. Whitley*, 514 U.S. 419, 432 (1995). Here, Rodriguez asserts that the prosecution violated *Brady* by not informing him of Woodall's coercive acts during the lineup. This does not appear to involve the kind of concealment that *Brady* and its progeny were crafted to prevent, *see Gauger v. Hendle*, 349 F.3d 354, 360 (7th Cir. 2003) ("The problem was not that evidence useful to him was being concealed; the problem was that the detectives were giving false evidence."), *overruled on other grounds by Wallace v. City of Chicago*, 440 F.3d 421, 427 (7th Cir. 2006). This type of situation may present an independent constitutional violation other than *Brady* that could be addressed directly under § 1983. Nevertheless, for purposes of this appeal we apply the *Brady* analysis.

[4] Defendants suggest that Rodriguez waived his claim because he failed to object to the jury instruction before it was given. While Rodriguez's objection was indeed inarticulate, the record indicates that it was enough to preserve the matter for our review.

in Mr. Rodriguez's trial"; and (3) "that Mr. Rodriguez would not have been convicted if this evidence had been disclosed."

Rodriguez misunderstands the purpose of this instruction. He emphasizes that, to establish a *Brady* violation, one must show a reasonable likelihood that, absent the impropriety, the result of his trial would be different. *See Kyles*, 514 U.S. 432-34 (the touchstone of materiality inquiry under *Brady* is "reasonable probability of a different result"). For a criminal trial that is true, but that has little bearing on this case. Section 1983 creates a species of tort liability so that if a violation of constitutional rights causes injury, the injured person shall be fairly compensated. *See Heck v. Humphrey*, 512 U.S. 477, 483 (1994). Here, the instruction laid out what Rodriguez needed to prove *under § 1983* to recover damages. "As in a common law tort action, the plaintiff in a civil rights tort action [under § 1983] bears the burden of establishing that the defendant owed plaintiff a duty, that the defendant breached his duties to the plaintiff, and that his breach caused the plaintiff actual damages." *Jones v. Hamelman*, 869 F.2d 1023, 1031 (7th Cir. 1989) (quoting *Garza v. Henderson*, 779 F.2d 390, 395 (7th Cir. 1985)). For recovery under this statute, therefore, a constitutional violation, such as a *Brady* violation, is necessary, but more is needed. *See, e.g.*, *Baker v. McCollan*, 443 U.S. 137, 140 (1979) (threshold inquiry for action under § 1983 is whether the plaintiff has been deprived of a constitutional right). In addition Rodriguez had to demonstrate by a preponderance of the evidence a causal link between the injuries resulting from his conviction and the *Brady* violation. *See Herzog v. Vill. of Winnetka*, 309 F.3d 1041, 1044 (7th Cir. 2002) ("the ordinary rules of tort causation apply to constitutional tort suits"); *Berman v. Young*, 291 F.3d 976, 982 (7th Cir. 2002) (in §1983 action, plaintiff "required to prove that she sustained an actual injury and that her injuries had a causal connection with the alleged due process violation."); *Henderson v. Sheahan*, 196 F.3d 839, 848 (7th Cir. 1999). The instruction was a correct statement of the § 1983 requirements. While the district court could have possibly made the instruction slightly clearer by separating the *Brady* language from the language addressing the other required tort findings, its instruction did not misstate the law. Given our great deference to the district court, this suffices. The jury received a proper summary of the §1983 requirements, which allowed it the opportunity to appropriately apply the law.

III

In summary, Rodriguez's challenges fall short. Rodriguez waived his initial claim that insufficient evidence supported the verdict. The district court properly decided that evidence of Woodall's subsequent crime could only be used to impeach Woodall's credibility, as the crime could not establish either motive or knowledge.

Finally, the district court's instructions properly laid out the required elements to recover under § 1983 for a *Brady* violation.  Given these conclusions, we AFFIRM.